## Miller's Executors v. Miller's Heirs and Creditors.

(Decided December 1, 1916.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1.  Wills—Estates in Trust and Powers—Termination of Trust.— Where a trust is created by a will, a court will not decree its termination before the time fixed for its expiration by the will, and before all of its purposes have been accomplished, unless it is impossible of accomplishment, or is one of the trusts, which a court may decree the termination of by the consent and agreement of all the interested parties.

2.  Trusts—When Termination of May be Decreed.—A court may decree the termination of a trust before the expiration of the time fixed for its continuance, and before all of its purposes have been accomplished, if the scheme of its creation has been practically

accomplished, and all the interests have become vested, and the parties to it are capable and agree and consent that it be terminated.

3. Trusts—When Termination of May be Decreed.—If the writing by which a trust is created expresses the reason and purpose of the trust, and the reason and purpose for its creation have ceased to exist, a court of equity may decree its termination.

4. Trusts—Termination of Trusts.—A court of equity will not decree the termination of a trust at the request of the cestui que trustent, where it is manifest, that the creator of the trust intended, that the property should be held by the trustee, for the benefit of his supervision over it, and discretion in its management.

5. Trusts—Termination of.—Where the trust property is sold under a judicial decree to satisfy a prior encumbrance upon it, or in case of a trust created by a will, the trust property is sold under judicial decree to satisfy the debts of the testator, the trust becomes impossible of performance, and its termination should be decreed.

6. Wills—Settlement of Estate—When Creditors May Enforce Demands.—Where a testator fixes a time, by his will, when his executors shall settle and distribute the estate among the heirs and devisees, the heirs and devisees can not maintain a suit for a settlement and distribution of his estate, until the time fixed shall have arrived, but the creditors of the estate are not bound by such provisions of the will, and may enforce the collection of their demands, without regard to any such provisions in the will.

7. Descent and Distribution—Rights and Remedies of Creditors.—The right of the creditors to subject the property of a testator to the payment of the debts, which he owes them, is superior to the rights of the devisees, under the will.

8. Descent and Distribution—Rights and Remedies of Creditors.—A creditor of a decedent, whose debt is secured by a mortgage lien, is entitled to have his debt extinguished before the proceeds of a sale of the mortgaged property can be applied to the payment of any other debt held against the decedent.

9. Executors and Administrators—Debts of Against Estate and Payment.—Where, under the express directions of a will to carry on a business, the executors create debts, which are necessary to the conduct of the business, and such as prudence would dictate, and are compelled to advance their own means to pay such expenditures, they should be repaid before unsecured creditors of the testator, who stand by and do not secure the collection of their claims.

JOHN E. SHEPARD for appellants.

E. H. CHAMBERLAIN for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming in part and reversing in part.

W. R. Miller died, testate, in Covington, on the 23rd day of September, 1912. He left surviving him at the time of his death, his widow, Julia Miller, and three sons, C. C. Miller, A. R. Miller and Walter R. Miller, who were his only heirs. Walter R. Miller was an infant and about seventeen years of age, at the time of the death of the testator. The last will and testament of the decedent was admitted to probate at the October term of the county court, 1912. The will had been executed on the 25th day of October, 1911, a little less than one year before testator's death.

The testator, at his death, was the owner of lots Nos. 142, 143 and 144, which fronted on Eastern Avenue, in Covington, and in the Wallace subdivision, and upon the first named lot, his residence was situated, and the three lots mentioned were used with it for the purposes of the residence. He was, also, the owner of lots, which are Nos. 156, 157, 159, 160, 161, 162 and 163 respectively, and which are lots between Eastern Avenue and Oakland Avenue, in Wallace's subdivision, and front on the last named street. He, also, owned the south twenty feet of lot No. 17 and lots Nos. 18, 19, 20, 21, 22, 23, 24 and 25, which lie on the east side of Oakland Avenue, and front on the east side of that street, and are in Craig & Fisher's subdivision. He owed a debt amounting to three thousand dollars, with interest thereon at six per centum per annum from May 1st, 1911, to George England and the German National Bank, and which was secured by a mortgage upon lots Nos. 156 and 157. He owed to the Central Savings & Trust Company the sum of four thousand five hundred dollars, with interest at six per centum per annum, from the 1st day of July, 1906, and which was secured by a mortgage upon lots Nos. 142, 143, 144, 159, 160, 161, 162, 163, 18, 19, 20, 21, 22, 23, 24, 25, and the portion of lot No. 17, which was owned by him. He was indebted to various creditors, whose debts were unsecured, about eight thousand dollars, and was the owner of five hundred dollars in money and household property of the value of two hundred dollars. He was a florist and was engaged in the business of growing, culture and sale of flowers, bulbs, plants and shrubs, and in connection with that business owned a considerable stock of flowers and plants, and this business as conducted by him, was regarded as the most valuable asset of his estate. For the purpose of carrying on the business of a florist and

for the growing and maturing of flowers and plants, he had constructed upon lots Nos. 156 and 157, three greenhouses, which entirely covered the lots, and upon lots Nos. 17, 18, 19, 20, 21, 22, 23, 24 and 25 he had seven greenhouses and various hotbeds and other things, including heating apparatus and other articles of personal property used in connection with the business. Lots Nos. 142, 143, 144, 159, 160, 161, 162 and 163 were used in connection with the residence and not used in his business of a florist, except lot No. 159, which was partially devoted to that business.

The last will and testament of the testator is as follows:

"I, W. R. Miller, being of sound mind and disposing memory, declare this to be my last will and testament. First: I give to my wife all my household and kitchen furniture. I, also, give to her my residence on Eastern avenue, in the City of Covington, for and during her natural life, and one-third of the income of the rest of my estate for her life. Second: I direct that the floral business I now conduct and own be carried on by my executors in the name of W. R. Miller until my son, Walter, is twenty-five years of age, and there shall be no division of my estate until said time; and out of the proceeds of said business my executors will pay for the education, clothing and maintaining my son, Walter, not to exceed six hundred dollars a year, until he is twenty-two years old, but none of said sum shall be used, except for the time he is attending some educational institution. If the money spent for his education after June, 1913, does not amount to two thousand dollars, then there shall be paid to him in money when he arrives at twenty-five years of age the difference between the sum so spent for him for said purpose after June, 1913, and the sum of two thousand dollars. I give to my son, Charles, all my interest in the money due C. C. Miller & Company, at Lexington, Kentucky. I give to my three sons, C. C. Miller, A. R. Miller, and Walter Miller, equally, all my estate, subject to the provisions named in the foregoing clauses. Fourth: I appoint my sons, C. C. Miller and A. R. Miller executors of this will and request that they be permitted to qualify as such without bond.

"Witness my ........................... this 25th day of October, 1911.

                    "W. R. MILLER."

The floral business, which was conducted on lots Nos. 156 and 157, and that conducted on lots Nos. 17 to 25, inclusive, were in a way, conducted in connection with each other and as one business, but had different heating plants and might be conducted separately.

The executors undertook to carry on the floral business as directed in the second clause of the will with the result of the receipts of the business amounting to about seven thousand dollars per year and the expenditures in its conduct to about six thousand dollars per year, leaving an excess of receipts over expenditures of over one thousand dollars, which was entirely taken up in the payment of the taxes and interest on debts, repairs and other necessary expenses in the preservation of the estate, so there was no net income from the estate, and the widow could not be paid anything, as directed in the first clause of the will. There was expended for Walter R. Miller the sums directed in the second clause of the will, but he became twenty-one years of age on the 19th day of November, 1915, and did not attend school after June, 1913, only to the extent that three hundred dollars was spent for him, after that time, leaving a balance of seventeen hundred dollars to be paid to him under the terms of the will. No compensation has been received by the executors for their services, and to protect the estate against creditors and for necessary expenditures in carrying out the trust imposed upon them in the second clause of the will, in addition to the receipts of the business, they have been compelled to advance of their own funds a sum in excess of six thousand dollars. Creditors became importunate in their demands for the payment of the debts, which the estate owed them. The personalty of the estate was largely insufficient to pay the original debts, without considering the expenses of administration or the necessary expenses of carrying on the trust.

On June 30th, 1915, the executors, making the heirs of testator and the creditors holding debts against the estate, which were secured by mortgage liens, defendants to the action, presented their petition to the circuit court, in which they asked the court to appoint a receiver for the floral business, and for a construction of the will, and for a judgment defining the rights of the parties under the will; that the real estate be sold and the creditors of the estate be required to assert their claims in the action. Upon the same day, by the request of the

heirs of testator, except the infant, Walter R. Miller, and a majority in amount of the claims, of the creditors, a receiver was appointed for the floral business of the estate and qualified as such. Thereafter, on February 28th, 1916, an amended petition was filed by the executors, in which among other things, it was alleged, that they had endeavored since their qualification to execute the trust imposed upon them in' the second clause of the will, by carrying on the floral business of testator, as directed in the will, and out of the proceeds had been paid the interest on the indebtedness, taxes, repairs and operating expenses, as well as for the education, clothing and maintenance of Walter R. Miller, as provided in the will, but had been able to pay nothing to the widow under the provisions of the first clause of the will, and that it was not possible to conduct the business so that it would afford sufficient return to carry out the requirements of the will and pay the necessary charges upon the estate, and that in order to conduct it, they had been compelled to extend their personal credit for the carrying on of the business and had advanced six thousand two hundred fifty-seven dollars and seventy-three cents to sustain and carry on the trust, and to prevent creditors' from instituting actions against the estate for their debts; that the nature of the property was such that it was more valuable for the conduct of a floral business than otherwise and to sell it in separate lots would destroy its value to a material extent, and that the portions of it, which were used in the floral business, could not be divided and sold without greatly impairing the value of each portion and the value of the whole; that a forced sale would be disastrous to the estate, because of the limited market for such business; that by reason of the charges and trust imposed upon the property and the indefinite character and rights of the devisees under the will, they could not secure a credit for the carrying forward of the business of the trust; that they had not been able to secure from the business a sufficiency of revenues to execute the trust after paying the charges upon the property and the necessary costs of operation, which they were obliged to pay in order to be allowed to proceed, at all, and again sought a construction of the will and a judgment defining the rights of the devisees, respectively, and a judgment against the estate for the sums advanced by them.

Walter R. Miller, who had now become twenty-one years of age, the widow of decedent, and the executors in their capacity as devisees, filed an answer and joined in the prayer of the petition, for a construction of the will and a judgment defining their interests under the will, respectively, as applied to the extraneous facts encountered in its execution. Proof was heard, which substantially supported the averments of the petition and amended petition as to the character, value and location of the real estate involved; the amounts of the debts and the inability of the executors to carry out the provisions of the will relating to the conduct of the floral business; the payment of the charges upon the estate, and the indebtedness against it, and their inability to pledge the estate for money.

The court adjudged, (1) that the executors could not carry on the floral business as directed in the will without such a substantial loss as to materially impair the estate and that it must be sold for the payment of its debts; (2) that it was impossible for the executors to so manage the trust estate as to perform the directions of the testator with reference to the estate with the charges imposed upon it by the will and by the testator previous to his death; (3) that the real estate mortgaged by testator in his lifetime could not be sold in satisfaction of the mortgage debts, without destroying the floral business and thus necessarily terminating the trust.

Basing its judgment upon the above findings of fact, the court then adjudged, that the lots Nos. 156 and 157, of Wallace's subdivision, and 17, 18, 19, 20, 21, 22, 23, 24 and 25, of Craig & Fisher subdivision, should be first sold and out of the proceeds the mortgage indebtedness upon the lots must be paid and the balance applied to the payment of the unsecured indebtedness, including the advances made by the executors, and if any portion of the proceeds of the sale of the lots mentioned remained unexpended, out of it to pay the mortgage indebtedness upon lots Nos. 142, 143, 144, 159, 160, 161, 162 and 163, of Wallace's Subdivision; and if only a portion of the last mentioned lots had to be sold to satisfy the indebtedness of the decedent, then lots Nos. 163, 162, 161, 160 and 159 should be sold in the order mentioned, and if the indebtedness should be satisfied without a sale of lots Nos. 142, 143 and 144, upon which the residence of

testator is situated, then these lots should be held by the widow as a home for and during her natural life with remainder to the three sons of testator, subject to a charge of seventeen hundred dollars, without interest, in favor of Walter R. Miller.

The first question presented is: Did the court have power to terminate the trust provided for in the second clause of the will? It will be observed that the testator did not mention his debts in the will, and did not make any provision for their payment. Neither did he fix any time when his executors should make a settlement of the indebtedness of his estate. While, it has been held, that where a testator fixes the time, by his will, when his personal representative should make a settlement and distribution of his estate among his heirs and devisees, the heirs and devisees are bound by such a provision and cannot maintain a suit to settle the estate prior to the time fixed by the will for the settlement and distribution, but such a provision in a will cannot restrain the creditors from coercing the payment of their demands before such time, and they may proceed without regard to the provisions of the will. Linthecum, etc. v. Vowels, 26 R. 221. The will, in the instant case, provides, that a division of the estate shall not be made until Walter R. Miller shall arrive at the age of twenty-five years, but the division referred to and intended by the testator was a division among his devisees, for as before said, he undertook to make no provision with reference to his creditors or the payment of the obligations of his estate. The executors, as his personal representatives, can maintain an action for a construction of the will and a settlement of the estate against his devisees, creditors and others interested in the estate, as provided by section 428, subsections 1 and 2, of the Civil Code, and this action may be treated as such if the creditors are made and become parties to the action, as prayed for in the petition. In such an action a judgment may be rendered for the sale of the real estate of the decedent, if it appears that the personalty is insufficient to satisfy the debts of the estate. All of the heirs and devisees, at the time of the judgment, were above the age of twenty-one years, and parties to the action. The allegations in the pleadings, as well as the evidence heard, proved without doubt, that it was necessary to sell the real estate, or at least a large part of it, and probably all of it, to satisfy the indebted-

ness.  The value placed upon all the property was about twenty thousand dollars, and the debts amount to eighteen thousand dollars, not including the costs of administration, and the personal estate amounted to only five or six thousand dollars.  The trust created in the second clause of the will is expressed in plain and unambiguous terms.  There can be no doubt of the intention of the testator, as gathered from the language of the will.  The intention of the testator was that the executors should carry on the floral business, in which the testator was engaged at the time of his death, and in his name, until his youngest son should become twenty-five years of age, and they should pay out of the proceeds of the business for the clothing, education and maintenance of the son, not exceeding six hundred dollars per year, until he should become twenty-two years of age, but none should be expended for him, except when he was attending some educational institution, and if the amount expended for his education after June, 1913, did not amount to two thousand dollars, he should receive the difference between the amount expended for his education after June, 1913, and two thousand dollars, when he became twenty-five years of age.  Hence, the time for the expiration of the trust was when Walter R. Miller became twenty-five years of age, which time has not yet arrived.  The purpose of the trust is very plain to be seen.  It was for the education of the infant son of testator, and his maintenance while obtaining the education.  The testator contemplated, what has happened, that the son would probably not attend school, and he then desired to make a provision for him in lieu of the educational advantages, which he would fail to take advantage of.  The intention of the testator being plain the trust should be executed, and a court has no power to terminate it, unless it is impossible of accomplishment or is one of the trusts belonging to a class, which a court may dissolve and terminate upon the request of the parties to it.  There seems to have been no other income arising from his estate, except such as was derived from the floral business, and the widow of testator, under the first clause of the will, was to receive one-third of the income from the entire estate.  Ordinarily a trust is ended, only when the purposes for which it was created have been accomplished.  Courts of equity may, however, decree the termination of a trust and a distribution of the trust fund, when all

of the parties, who are interested in it, are capable and agree and consent to its termination, although the trust may not have ceased by expiration of time, and all its purposes may not have been accomplished, 27 Am. & E. Ency. of Law, 322; Perry on Trusts, Sec. 290; Smith v. Harrington, etc., 4 Allen 366, 40 Cyc. 1812; Armstead v. Hartt, 97 Va. 316, 40 Cyc. 1807; Sears v. Choate, 146 Moss. 395; Bowdwitch v. Andrew, 8 Allen 339; Inches v. Hill, 106 Mass. 575; Re Stone, 138 Mass. 476; Browning v. Ficklin, 26 R. 470; Avery v. Avery, 90 Ky. 616; Donaldson v. Allen, 182 Mo. 626; Adams' Trustee v. Adams, 56 S. W. 151, 21 R. 1756. The cases, however, in which the courts of equity exercise the power to terminate the trusts before the time of their expiration, are limited to the cases where the instrument of their creation expresses the reason for their creation, and that reason has ceased; or upon request of all the parties in interest, only, where the whole design and object of the trust has been practically accomplished, and all the interests created by it have become vested. Weakley, Trustee, v. Buckner, 91 Ky. 457; Brannin v. Sherley, 91 Ky. 450. It is apparent that the objects of the trust, in the instant case, have not been accomplished. Furthermore, this is an active trust, and it is manifest that, although the testator had his son, Walter, in mind as the sole beneficiary, he intended that the control and management of the property should be in the hands of the trustees and subject to their discretion, and hence a court would refuse to terminate the trust upon his application or that of the trustees. Hence, the consent of the interested parties would not authorize a court to terminate it.

The trust property is, however, covered by mortgage liens, and in addition to the mortgage liens, there are outstanding against the property several thousand dollars of unsecured debts of the testator. In the will, which created the trust, the testator made no provision for the payment of the debts or the discharge of the liens. The trustees cannot pledge the property for money to discharge the liens or to pay the other debts, because of their amount compared with the value of the property, and the refusal of others to extend the necessary credit, with the property as the security. The rights of the creditors to subject the property to the satisfaction of the debts is superior to the rights of the devisees under the will. They do not have to wait on the expiration of

the trust by time.   If the property is sold to satisfy the debts, this removes the authority of the trustees over it, and hence, the further execution of the trust becomes impossible, and the rights devised to the beneficiaries of the trust must fail.   A judicial sale of the trust property under an encumbrance, which was made prior to the creation of the trust, necessarily renders the trust impossible of accomplishment.   DeBevoise v. Sandford, Hoffm. (N. Y.), 192, 39 Cyc. 103; 2 Perry on Trusts 292. Hence, the trust in this case has become impossible of accomplishment, because of the arising of conditions, which could not be foreseen when it was created, and it terminates itself and the trustees are relieved from any responsibility for the further execution of it when it is adjudged to be sold, in satisfaction of the encumbrances placed upon it by the testator, and his unsecured debts. Cuthbert v. Chauvett, 18 L. R. A. (O. S.) 748; Hawthorn v. Roote, 6 Bush 501.   The rendition of the judgment for the sale of the trust property to satisfy the debts of the testator terminates the trust, in this case, as it would be idle to attempt to further execute it, with a sale of the trust property impending, and in good faith to be presently made.

(b) The court adjudged that the lots Nos. 156 and 157 and 17, 18, 19, 20, 21, 22, 23, 24 and 25 being the lots upon which the floral business was conducted, should be sold and the proceeds be applied to the payment of the mortgage indebtedness upon these lots, and the sum remaining, if any, should be applied to paying the unsecured indebtedness against the estate.   This seems to be in violation of the rights of the mortgage creditors. The party holding the mortgage upon lots Nos. 156 and 157 is a different party from the one holding the mortgage lien upon the other real estate of the testator.   The overplus of the proceeds of the sale of the lots embraced in one of the mortgages, over and above what is necessary to pay off the lien, cannot be appropriated to the payment of the other mortgage indebtedness, to the exclusion of the unsecured creditors.   Neither can the proceeds of the sale of the lots covered by one of the mortgage liens be appropriated to the debts of the unsecured creditors until the mortgagee's debt is extinguished. Lots Nos. 156 and 157 should be sold in satisfaction of the mortgage upon them, and the holder of the lien is entitled to have his entire debt extinguished from the

proceeds of the sale, and the remainder of the proceeds, if any, should be applied to the unsecured debts. The same course should be pursued in regard to the mortgage upon the other real estate, and the holder of a mortgage lien will not be entitled to participate in any of the funds arising from any other source, unless the sale of the property, upon which he has a lien, fails to satisfy his debt, then he can participate in the general funds to the extent that the debt is unsatisfied. The lots embraced by each mortgage, respectively, should be sold primarily for the satisfaction of the mortgage lien and may be sold together or two or more of them together, as it may appear that they will sell for the greatest amount. No more of the real estate should be sold than is sufficient to satisfy the indebtedness against the estate, unless the portion embraced by each mortgage, respectively, cannot be divided without materially impairing its value. If practical to do so and not necessary to pay the indebtedness, the portions upon which the residence of testator is situated should not now be sold.

(c) The court was in error in adjudging that all advancements made by the executors out of their own means should be upon an equality with the other unsecured indebtedness of the estate. If the executors, in carrying on the floral business as directed by the will, were compelled to expend their own means, and such expenditures were necessary to execute the trust, and such as were dictated by prudence, such debts, like the costs of administration, are preferred, and should be paid before any of the unsecured indebtedness is paid. If funds of their own were used by the executors in satisfying indebtedness against the estate, which was created by the testator—as to such indebtedness the executors should be treated as assignees of the creditors, whose debts they have discharged, and are, as to them, upon an equality with the holders of other similar debts.

(d) It was manifestly the intention of the testator that his widow should have a life estate in his residence and one-third of the income of the rest of his estate for her life, and the next consideration was the education of and a provision for his infant son. The rights of his creditors to have his property subjected to the payment of his indebtedness are, however, superior to the rights of these intended objects of his bounty under the will, and if it takes the entire property to satisfy the cred-

itors, the bequests for the benefit of his wife and son fail. It is insisted, that when the trust created by the second clause of the will is terminated, that the devise of the difference between the amounts paid for the infant son's education after June, 1913, and two thousand dollars, should fail. We cannot concur with this contention. The language of the will does not necessarily require that the bequest be satisfied, only, out of the proceeds of the floral business, and the clause, which follows, provides, that the devise of the residue of the estate to testator's three sons in equal amounts, is subject to the provisions named in the foregoing clauses, one of which was that his infant son, Walter R. Miller, should receive the difference between what was expended for him after June, 1913, and two thousand dollars. Hence, if, when a sufficiency of the real estate is sold to satisfy the indebtedness, and any remains unsold, including the late residence of testator, his widow, Julia Miller, will be entitled to hold the residence and lot upon which it stands for her natural life, and to receive one-third of the income from the rest of the lands, which are not sold, during her life. No division can be made of the lands which are unsold until Walter R. Miller is twenty-five years of age, but when a division is made, one-third of the income of the lands must be secured to the widow during her life. Walter R. Miller will have a lien upon the part of the lands unsold for the amount of the bequest to him, payable at the death of the widow, but bearing no interest until that time, and at the death of the widow, the residence and other lands, which may remain undisposed of, should be divided equally between the three sons of the testator, after the payment of the bequest to Walter R. Miller. If the residence lot should be sold on account of indivisibility, as before stated, and after the payment of the debts, a sum of money remains unexpended, the entire income from this sum should be paid to the widow during her life and at her death the bequest to Walter R. Miller should be paid out of it, and if any remains, it should then be equally divided between the three sons of testator, as provided by the will.

It is, therefore, ordered that the judgment, so far as it adjudges that the trust property, as well as a sufficiency of the other real estate to satisfy the indebtedness be sold in satisfaction of the indebtedness, and the trust secured in the second clause of the will be termi-

nated, is affirmed, but as to all other matters it is re-
versed and remanded with directions to proceed in con-
formity with this opinion.