IN RE ESTATE OF JAMES B. HARSH.

GUY R. WILLIAMS, Appellee; v. GRACE S. HARSH, Administratrix, et al., Appellants.

MARCH 13, 1928.

REHEARING DENIED DECEMBER 14, 1928.

· *Carr, Cox, Evans & Riley*, for appellants.

. *George A. Johnston, D. W. Harper, Higbee & McEniry*, and *Kenneth H. Davenport*, for appellee.

MORLING, J.—The contention of the defendants, in substance, is that the order of the probate court authorizing the  administratrix to continue the business of the deceased is void; that plaintiff depositors' claims were never filed, and particularly not filed within six months, and therefore plaintiffs are not entitled to the status of claimants,—at least, to that of claimants of the third class, or as having priority over defendants.

James B. Harsh in his lifetime owned and operated a private bank, under the name of "The Land Credit Bank." It was a bank of deposit. A part of his business was the loaning of money on mortgage security. He sold and guaranteed the mortgages. He died intestate, June 19, 1923. His daughter, Grace S. Harsh, was appointed administratrix. The first publication of notice to creditors was July 9, 1923. On that date, on the application of the administratrix, an order was made directing her to continue the business of the bank "in accordance with the terms, conditions, and previous management of said business, and that she be authorized and empowered to carry out the contracts and obligations of said estate as fully and completely as the decedent could do, if living." The business was continued accordingly. Deposits were paid, new deposits received, loans made and guaranteed, expenses and some debts paid. Without pausing to reconcile the figures, it is sufficiently accurate to say that the deposits at the time of death of decedent amounted to $69,834.54. Deposits were made between the time of decedent's death and the closing of the business, December 16, 1924, to the amount of $208,845.63. The withdrawals during that time amounted to $234,816.67. The deposits December 16, 1924, when the bank closed, amounted to $32,345.04. The cash and amounts in depositary banks at date of death were $37,512.93, and at the close of the business, $3,317.87. All of the property of James B. Harsh was carried on the books of the bank, which showed credit to him therefor at the date of his death to be $95,992.86. This seems to have been the equivalent of capital, surplus, and

undivided profit account. The depositors did not file claims. Many of the plaintiffs were depositors when intestate died. The business was apparently conducted, accounts kept, and books balanced in the same manner as that of banking businesses generally. Defendants reside in the state of Maine, and are creditors because of the guaranty by the Land Credit Bank of real estate mortgages sold by it to them. They did not file claims within the year allowed therefor, but for equitable reasons, were permitted to file after the expiration of the year, pursuant to the judgment of this court pronounced in *Nichols v. Harsh*, 202 Iowa 117.

1. Is the order directing the administratrix to continue the business void? Unlike many states, we have a statute which reads as follows:

"The court, in its discretion, may authorize an executor or administrator to continue the prosecution of any business in which the deceased was engaged at the time of his death, in order to wind up his affairs with greater advantage, but such authority shall not exempt him from returning a full inventory and appraisement, and making reports, as in other cases." Section 11956, Code of 1924 (Code of 1897, Section 3337).

Defendants do not claim that the statute is void, but that the order under it is void, as made without notice to creditors, and as in excess of the power given by the statute, in that the statute empowers the court to authorize the administrator to continue the prosecution of the business "in order to wind up his affairs with greater advantage," while the order is not so limited, and was not so executed.

The statute does not require notice, and such requirement would manifestly frustrate its purpose. The closing of an active business, especially a banking business, is usually not only destructive of its value as a going concern, but depreciative of the property or stock in use and the capital invested in it, and, if the estate is not financially strong, may be a calamity to those interested in the estate, and to the public. Authority to continue the business, if to be given and to be of value, must be exercised without delay. The creditors may not be then known, and they may be widely scattered. To give notice to them would be, in many cases, impracticable, and in some impossible. De-

fendants had no property interest in the assets of the bank. They are non-lien creditors. Probate proceedings as to them were quasi *in rem*, not *in personam*.

"It is elementary that probate proceeding by which jurisdiction of a probate court is asserted over the estate of a decedent for the purpose of administering the same is in the nature of a proceeding *in rem*, and is therefore one as to which all the world is charged with notice." *Goodrich v. Ferris*, 214 U. S. 71 (53 L. Ed. 914).

See, also, *Johnson v. Barker*, 57 Iowa 32; *Alabama G. S. R. Co. v. Hill*, 139 Ga. 224 (76 S. E. 1001).

Administration of estates of deceased persons is undertaken by the state through its courts, and pursuant to its statutes. The administrator is the officer of the law and of the court, and conducts the administration pursuant to the provisions of the statutes, under the court's authority and supervision. *In re Estate of Meinert*, 204 Iowa 355. The exercise of the power granted by the cited section of the Code is a matter of administrative procedure, expressly committed to the discretion of the court. The court had jurisdiction and statutory authority to authorize the administrator to continue the business. If the order was too broad, it was not thereby void. The estate was *in custodia legis* in proceedings quasi *in rem*, and those interested, chargeable, as they were, with notice, should move for correction. The order, however, must be construed in connection with the business which was to be continued, a banking business, in which was used all of the property of the decedent. It must be construed in connection with the business as it appeared upon the apparently complete records thereof to be. The estate was the assets carried on the bank books as bank assets. In the books the assets and liabilities were daily recorded and balanced. The contracts to be carried out were bank contracts, such as are usually shown on banking books. Defendants' claims, or like claims, were not known, and not in view. No reason for circumscribing authority and continuing the business was apparent until the unexpected claims of defendants were filed, and the filing of these claims was reason, not for circumscribing the order, but, if known, or filed in time, for not making the order at all. Defendants' equitable reason for

not filing their claims in time was that they did not know that the Land Credit Bank was a trade name under which decedent was doing business, and that they were dealing with an indivi-- dual, instead of a corporation. *Nichols v. Harsh*, 202 Iowa 117. This was not the fault of the depositors, or others dealing with the bank on the faith of the court's order. Furthermore, the order is not directly attacked. Defendants aver collaterally, in their answer in this proceeding, that the order was ex-parte, without notice, and void.

It may be that, because of subsequent developments, particularly the existence of the defendants' claims, of which neither the court nor the administrator was informed at the time, and which seem to have been the cause of closing the bank, it would have been better to have closed at the time of intestate's death, than on December 16, 1924; but the court can exercise its discretion only on facts as they appear at the time it is required to act.

The order is not void.

2. Defendants contend that plaintiffs have no standing to maintain their suit, because they have filed no claims, and are, therefore, not claimants, under Section 11970, Code of 1924.  This and accompanying sections provide for the establishment and allowance of demands against the estate by adversary proceedings, and provide the method of procedure therefor. Section 11969 authorizes the payment of expenses of administration, of last sickness and funeral, and the allowance to widow and minor children. Section 11970 provides:

"Other demands against the estate shall be payable in the following order: * * * ."

Section 11959 permits approval by the administrator, and allowance thereon by the clerk, without notice. The filing of his claim by a creditor, or the allowance thereof by the court, is not made a condition precedent to the authority of the administrator to approve and pay it. The administrator may voluntarily pay valid claims against the estate, though they are not filed, and having paid them, is entitled to credit therefor. *In re Estate of Pennock*, 122 Iowa 622; *In re Estate of Wonn*, 80 Iowa 750. The allowance by the administrator is not final.

It may still be reviewed. *Ryan v. Hutchinson*, 161 Iowa 575; *McDermott v. Estate of McDermott*, 138 Iowa 351. The act of the administrator in paying debts for which no claims are filed, is not void. Furthermore, the administratrix was, on July 9, 1923, ordered, as well as authorized and directed, to continue the  business of the bank "in accordance with the terms, conditions, and previous management of said business;" and she was "authorized and empowered to carry out the contracts and obligations of said estate as fully and completely as the decedent could do, if living." In executing this order, she was directed to, and actually did, receive new deposits, and pay both old and new deposits. Decedent's contracts with his sight depositors were to pay them on demand; with his time and savings depositors, to pay them according to stipulated conditions. These contracts administratrix was authorized to perform. No condition was stipulated that the depositors should first file claims. It is well known that there are (or at least have been) a number of private banks in the state ranking in size and amount of business done with the average incorporated bank. The number of depositors may range into the hundreds. Their accounts are daily balanced on the books of the bank. Those books are frequently, if not usually, the evidence depended upon by both parties as correctly showing the balances. The demand and condition of the account to date and on each day appear upon the owner's own books. After intestate's death, the books, of course, passed to the administratrix. Anyone legally interested had an enforcible right to inspect them. 24 Corpus Juris 49. The administratrix was the officer of the court. For all practical purposes, the bank books became the administrator's books and records. Information concerning the amount owed to depositors and the state of their accounts could be much more accurately and conveniently obtained at the bank than from claims filed in the clerk's office. If the business is continued, the accounts change from day to day, but record of the changes is made daily, as it was before. The administratrix, and the court through her, on the date the order now under consideration was made, had, therefore, this record of deposits, which was the decedent's own acknowledgment of the correctness of the demand each day, and of his liability. In substance, the claims were in the hands of

the administratrix, were in the possession of the court, were allowed, and ordered paid. See *Marlow v. Marlow*, 48 Iowa 639. It was impossible to continue the business of the bank without receiving and paying deposits and discharging the other obligations of the bank incidental to or a part of the routine of such business. Under the order of the court, it was the duty of the administratrix to receive new deposits and pay both old and new. It was the depositors' right to have them paid. No fraud or bad faith with respect to any depositor's account is charged. No advantage would accrue to anyone by the filing of formal claims. To file them would be merely to clog the files and impose upon the court and its officers an entirely useless task,—a task the value of the performance of which would, by the continuance of the business and daily changes in the accounts, be lost the next day. To hold that the law requires such filing, under the circumstances here shown, would not be in the interest of utility or convenience or the orderly conduct of the business of the probate court. This is in accordance with the present convenient practice in bank receiverships, in which the filing of formal claims by depositors is not now required. To deny the depositors the benefit of the order of the court would be to make of probate procedure a trap and an instrument of fraud and injustice.

On July 9, 1924, at the expiration of the year for filing claims, the administratrix made application for an order approving and allowing claims. Among them were four notes, ranging from $550 to $5,000, and in general terms were "Deposits in Land Credit Bank $39,834.54," and accrued interest $247.98. The court, on the same date, found that these claims were just, and allowed them. This was an approval of the deposits standing on the books of the bank at the date of intestate's death as valid claims, and of the payment of so much thereof as had been paid. Depositors, new and old, had acted on the faith of the order of July 9, 1923. The administration of that order by the administratrix was, by the order of July 9, 1924, confirmed. Depositors continued to act on the faith of both orders.

Furthermore, as has been stated, the estate had received, since decedent's death, $208,845.63, the most of which presumably was received after the order of July 9, 1923. The estate had the benefit of the money so deposited, and was under liability

to repay it. *Deery v. Hamilton*, 41 Iowa 16; *Dunne v. Deery*, 40 Iowa 251; *Iowa L. & Tr. Co. v. Holderbaum*, 86 Iowa 1, 13; *Simpson v. Snyder*, 54 Iowa 557; *In re Estate of Manning*, 134 Iowa 165; *University State Bank v. Johnson*, 202 Iowa 654, 657. Claims for such deposits, being liabilities incurred by the executor for the estate, after intestate's death, were not required to be filed and allowed. *University State Bank v. Johnson*, 202 Iowa 654; *Nichols v. Harsh*, 202 Iowa 117; *Savery v. Sypher*, 39 Iowa 675; *Wickham v. Hull*, 102 Iowa 469.

Whether or not the creditors of a business conducted after decedent's death must share pro rata with creditors of decedent at the time of his death, has been variously decided, depending on the law of the particular state and on the facts of the particular case. 24 Corpus Juris 429. We have no occasion to decide the question. The reasoning in some of the cases is quite suggestive. The only case we have discovered depending on statute similar to ours is *Stoughton Wagon Co. v. Dreyfus Co.* (Tex. Civ. App.), 181 S. W. 703, in which it was held that the cost of replenishing the stock of merchandise used in the business of decedent continued after his death, pursuant to statutory authority, should have priority, as expenses incurred in the management of the estate during administration. In *Miller's Executors v. Miller's Heirs*, 172 Ky. 519 (189 S. W. 417), it was held that, if executors, in carrying on the business as directed by the will, were compelled to expend their own means, and such expenditures were necessary, to execute the trust, and dictated by prudence, "such debts, like the costs of administration, are preferred, and should be paid before any of the unsecured indebtedness is paid." The estate there was given by will. In the case before us, the administratrix received money from depositors, and used it for the benefit of the estate, under the explicit direction of the court. It does not appear that the estate, except for the then unknown claims of the defendants, was insolvent, or that there was any reason for believing it to be so. Prudence, or lack of prudence, is not involved, under the conditions existing here. In *Naftel v. Osborn*, 96 Ala. 623 (12 So. 182), the statute provided:

"Any crop commenced by a decedent may be completed and gathered by the executor or administrator, and, the ex-

penses of the plantation being deducted therefrom, is assets in his hands * * * ''

This statute was held to invest the administrator with discretion; but it was held, under the particular circumstances, to have been his duty to complete the cultivation and to gather the crop, and that expenses incurred by the administrator therein were paramount to the claims of creditors.

It may be suggested that intestate's liability to defendants is on his contracts incurred in the banking business, and that the money which they paid to him for the mortgages purchased by them went into the business, as did that of the depositors; that, inasmuch as the bank is a private bank, and depositors therein, as such, are not entitled to a preference, defendants likewise are within the terms of the order of July 9, 1923. In the first place, there is no evidence before us as to the nature or details of defendants' claims, except that they are based on decedent's guaranty of mortgages sold by him to them. When the sales were made (except that they were in decedent's lifetime), how the business was transacted, does not appear. But defendants ignored the order of July 9, 1923, claimed no benefit under it, sought and secured allowance of their claims, under the statute, after the expiration of the year. They not only apparently established their status as fourth-class claimants, but, in their answer here, expressly admit that their claims are claims of the fourth class. Defendants are claiming priority, or at least equality, not by building themselves up, but by attempting to tear the plaintiffs down. Their claims as admitted fourth-class claims cannot be advanced to third-class claims. *Kells v. Lewis*, 91 Iowa 128.

Defendants' claims appear to consist of guaranties of something like 113 promissory notes, amounting at face to about $150,000. They were secured by mortgages negotiated by the Land Credit Bank; but the value of the security does not appear, nor have the defendants made any offer to account for or to return to the estate such security, though it may be that the estate would be entitled to subrogation, if it were able to pay the claims. None of these claims was filed before September 24, 1924. The greater number were filed from December 11, 1924, to December 29, 1924. Some were filed later. The business of the bank was

continued until December 16, 1924. The cause of the closing then seems to have been the filing of defendants' claims. The report of July 9, 1924, inferentially was filed on the assumption that the year for filing claims had expired, and that the personal property (appraised at $89,514.02) was sufficient to pay debts and expenses. The administratrix testifies that, though she knew of the guaranties, yet, at the time she filed application for order to continue business, she did not know of any claims' ever having been made upon them; that she did not anticipate that there would be any actual liability on them, and believed there would not be a cent's loss to anybody. Defendants' claims were allowed on the assumption that the estate was solvent. *Nichols v. Harsh*, 202 Iowa 117. Only one claim was before this court. We said:

"The relief granted in cases of this kind is made by statute to depend upon 'peculiar circumstances,' entitling the party to equitable relief. No element of estoppel is involved herein; the rights of no other parties have intervened because of any act on the part of appellant; the estate is unsettled, and open for proper distribution among the legitimate creditors; there is no contention that appellant's claim is not valid; and the estate appears to be solvent. * * * Every case must, of necessity, under this statute, be governed by the 'peculiar circumstances' pertaining to it."

There was a stipulation in the district court that the decree in the *Nichols* case should be entered in all, and that the final judgment of this court in case of appeal should be the final judgment in each of the claims. It is these claims that make the estate insolvent. In *Kells v. Lewis*, 91 Iowa 128, 131, it is said:

"The advancement of a claim from the fourth to the third class raises a question between creditors as to priority, where an estate is insolvent; and, in our opinion, the statute absolutely prohibits any such demand by a fourth-class creditor. A large number of cases have been determined by this court, specifying what equitable circumstances may entitle a creditor to relief, but the question has usually been between the claimant and the estate or administrator, without involving the rights of third-class creditors; and it has always been held that the fact that the

estate is solvent is a material consideration in favor of allowing the claim as one of the fourth class.''

It is not the policy of the law to render solvent estates insolvent by the allowance of claims filed after the expiration of the year. As has been said, the depositors, before defendants' claims were filed, had the right, under the order of July 9, 1923, to have their deposits paid. It was the duty of the administratrix to pay them. Nothing more could be accomplished by going through the empty formality of filing claims. The present proceeding was transferred to equity. Defendants do not argue their exception to the transfer. The case is before us in equity. If it were in probate, its determination should be governed by equitable considerations. *Mock v. Chalstrom*, 121 Iowa 411. There is nothing in the record to charge depositors with notice of the existence of defendants' claims. It is inconceivable that, if the undisclosed claims of the defendants had been known to the court, the order of July 9, 1923, would have been made, or, if made, that depositors would have put their money in the bank. $234,816.67 has been paid out on the faith of the order, and cannot be recovered. $208,845.63 of depositors' money was put in the bank, and the depositors' equities on account thereof cannot now be adjusted. Defendants were admitted as fourth-class claimants, for the equitable reasons asserted in the *Nichols* case. While defendants are, in form, on the defensive, they are asking that the order allowing plaintiffs' claims be set aside, and, in substance, that the order of July 9, 1923, and the rights of depositors acquired under it, be dissolved. This is essential to the reduction of depositors' claims to the level of that of defendants, or to a lower level. Defendants are appealing to the equitable powers of the court.

We are of the opinion, under the facts of this case, that the statute of non-claim is not available to defendants in bar to depositors' claim to priority, and that, in equity, the case is with the depositors.—*Affirmed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.