IN RE ESTATE OF MARION E. GRIFFIN.

No. 42927.

September 24, 1935.

Rehearing Denied February 21, 1936.

Carr, Cox, Evans & Riley, for appellant Grace Stevenson.

Cornwall & Cornwall, and Shull & Stilwill, for appellant Elsie Edwards.

George A. Heald, Jr., and Baldwin & James, for appellee City of Spencer.

D. M. Kelleher, and Buck & Kirkpatrick, for appellees Lewis

Scharnberg, E. Taggart, and Fred Kirkpatrick, executors under Marion E. Griffin's will.

Roberts & Roberts, for appellee and cross-appellant American Home Finding Ass'n.

Swanson & Perkins, for appellee and cross-appellant Christian Home Ass'n of Council Bluffs.

Davis, McLaughlin & Hise, for appellees and cross-appellants American Nat. Red Cross, E. G. Morgan, Jr., Mrs. Jenny M. Daley, Bertha Gray Harker, George Otis Gray, and Ben S. Gray.

George A. Heald, Jr., for appellee First Union Trust & Savings Bank of Chicago, Ill.

MITCHELL, J.—Marion E. Griffin died testate, a resident of Spencer, Clay county, Iowa, on the 14th day of October, 1925. His will was admitted to probate a short time thereafter and the executors named were appointed and qualified. Griffin was at the time of his death past eighty years of age. He had never married. In business he had been unusually successful, having accumulated an estate which was estimated at the time of his death to be worth around $600,000. He was a careful business man, and thought he could plan for the carrying on of his business even after his death. He had a will prepared, a lengthy document, containing sixty-four separate items, set out in paragraphs and covering thirty-two pages of the printed abstract. No doubt in Griffin's mind every contingency and emergency that could arise was covered in the will. But, unfortunately, his shrewd business ability was not such that would permit him to see into the future for the plans which he made, as so often happens, have not worked out as he had desired. After the will had been admitted to probate, Elsie Edwards made the claim that she was the daughter of the decedent and entitled to inherit; that the will was in violation of the prohibitions of the statute, in that it disposed of a greater proportion of the estate to charity than is permissible thereunder. Sections 11848, 12031, 1931 Code. There was long and expensive preparation on the part of the estate to resist her claim, followed by a trial, which ended in a stipulation of settlement, entered into on the 24th day of May, 1927, between the said Elsie Edwards and the ex-

ecutors of the Griffin estate, which stipulation provided, among other things:

"6. The executors undertake that they will, within a reasonable time, turn over to some charitable, religious, benevolent, educational or kindred eleemosynary institution within the State of Iowa, approved by this court the sum of $25,000.00 or property of that agreed value, pursuant to the provision of Item LXIV of the last will and testament of Marion E. Griffin, the said donee institution, however, being charged with the obligation to pay to the plaintiff during her natural lifetime, an annuity of 4% on the said sum of $25,000.00; the executors meanwhile undertake and agree to pay the equivalent of said annuity out of the funds of the estate until such time as the said fund is turned over to such institution in accordance with the terms hereinbefore stated, the executors to make said payments to the plaintiff in semi-annual installments."

Shortly thereafter Grace Stevenson appeared and made the same claim that Elsie Edwards did; that she was a daughter of Griffin, entitled to inherit; and that the will was in violation of the prohibition of the statute, in that it disposed of a greater proportion of the estate than is permissible thereunder. On the 28th day of July, 1927, the executors of the estate entered into a stipulation of settlement with Grace Stevenson, which stipulation provided, among other things, as follows:

"6. That the said executors will within a reasonable time turn over to some charitable, religious, benevolent, educational or kindred eleemosynary institution within the State of Iowa, as approved by the District Court of Clay County, Iowa, the sum of Twenty-Five Thousand ($25,000.00) Dollars, or property of that agreed value, pursuant to the provisions of Item LXIV of the last will and testament of the said Marion E. Griffin, deceased, the said donee institution, however, being charged with the obligation to pay to the said Grace L. Stevenson or her said guardian during the natural lifetime of the said Grace L. Stevenson an annuity of about four per cent (4%) on the said sum of $25,000.00, the said annuity to be as large a percentage as possible consistent with safety and security; the executors meanwhile undertake and agree to pay the equivalent of said annuity of 4% out of the funds of said estate until such time as the said

fund is turned over to such institution in accordance with the terms hereinbefore stated, the executors to make said payments to the said Kathryn Stevenson, Guardian, during the term of her guardianship, and thereafter to the said Grace L. Stevenson in semi-annual installments.''

Among the assets of the estate was a banking business, which had been operated by Griffin for years under the name of ''M. E. Griffin, Banker.'' It was a private bank. The bank had assets at the time of Griffin's death of $509,492.71, consisting of Liberty bonds in the amount of $200,000, and cash in the amount of better than $93,000, bills receivable in the amount of better than $215,000, and furniture and fixtures of $600. Liabilities of the estate consisted of time deposits of $218,643.07, demand deposits of $115,006.91, and on his books he carried a capital stock charge of $25,000, of which he, of course, was the sole owner, and also an account to himself of $150,842.73.

In addition to the private bank, Griffin owned 1,400 acres of fine Iowa land, located in Clay county. His good business judgment is shown by the fact that there was no indebtedness against this land.

Among the depositors in the bank was the city of Spencer. At the time of Griffin's death there was on deposit in the bank, to the credit of the city of Spencer, $43,445.52. Mr. E. Taggart, one of the executors of the Griffin estate, was treasurer of the city of Spencer and had been from 1888, and during all of that period of time the city had continuously maintained an account of a considerable amount in the Griffin bank. After the death of Griffin, the city of Spencer continued to deposit money in the bank, until at the time of the trial there was a balance due the city of $36,670.44.

The litigation in which the estate was engaged with Elsie Edwards, and the administration of the affairs of the estate during the period of years that it has been in the course of administration, has cost in attorneys' and executors' fees better than $150,000. Objections have been filed to these huge amounts that were allowed, but the question of the allowance of the attorneys' and executors' fees is not at this time before this court, and no consideration is therefore given to it. Being an optimistic individual, the writer of this opinion anticipates that this court will be compelled to struggle with this question later on.

The depositors of the Griffin bank have all been paid with the exception of the city of Spencer. The costs of the administration of the estate have been paid, and certain of the specific bequests have been paid; but in the payment of these amounts of money the cash resources of the estate have dwindled down until now there is not sufficient on hand with which to pay the city of Spencer the amount which it had on deposit in the Griffin bank. And so the executors filed an application in the district court of Clay county, praying for an order for permission to borrow money upon real estate belonging to the estate, to pay the city of Spencer the amount of its deposit. To this application objections were filed by Elsie Edwards and Grace Stevenson, and by legatees under the will of Griffin. The city of Spencer filed a petition of intervention, claiming that it was entitled to have its deposit in the bank allowed in preference to the claims of the legatees and Elsie Edwards and Grace Stevenson. The objectors claim that the only assets of the Griffin estate out of which the city of Spencer can be paid is that part of the estate which was at the time of his death used in the bank. Elsie Edwards and Grace Stevenson also claim that by reason of the stipulations of settlement they are entitled to certain payments representing an annuity out of the funds of the estate and that their claim is prior to the rights of the legatees and devisees under the will.

It was stipulated that but two issues were to be submitted to the court at this time. The first is: ''Is the city of Spencer such a creditor of the estate that its claim is payable out of the general assets of the estate?'' The second is: ''Are Elsie Edwards and Grace L. Stevenson claimants against the estate; or are their claims which arise out of stipulations of settlement made by them in the year 1927, payable solely out of the residue of the estate after other claimants and beneficiaries are paid in full?''

The trial court found in regard to the first question the following:

(a) That the will of Marion E. Griffin authorized his executors to continue the banking business in which he was engaged at the time of his death.

(b) That the will disclosed an intention on the part of the testator to make the general assets of his estate liable for the obligations subsequently incurred in the conduct of the business.

(c) That an order entered by the court on May 30, 1930, constituted an adjudication against the objectors to the effect that the general estate of the decedent was subject to the payment of the deposit claims arising out of the subsequent operation of the banking business by the executors, and that by reason of all the foregoing the city of Spencer was entitled first to be paid out of any or all of the assets of the estate.

In regard to the second question the trial court found: (a) That the objectors, Elsie Edwards and Grace Stevenson, under the stipulations of settlement separately entered into between them and the executors, acquired only such rights as are limited to the residuary estate of the decedent, and that their claims and rights are junior and inferior to the rights and claims of the city of Spencer, and all other creditors, devisees, and beneficiaries designated in the will.

From the finding and decree of the lower court Elsie Edwards and Grace Stevenson have appealed, and are designated in this appeal as the appellants. The American Home Finding Association, the Christian Home Association of Council Bluffs, American National Red Cross, E. G. Morgan, Jr., Mrs. Jenny M. Daley, Bertha Gray Harker, George Otis Gray, and Ben S. Gray filed a cross-appeal as against the city of Spencer, claiming that the deposit of the city of Spencer is not a first lien upon the general assets of the estate, senior to the claim of the devisees, legatees, and beneficiaries under the last will and testament of Marion E. Griffin, but that the city of Spencer is only entitled to receive payment out of that part of the Griffin estate which was "embarked in the banking business" at the time of Griffin's death.

**■ ■ ■** I. The first question we will consider is whether or not the city of Spencer is entitled to the payment of its claim from the general assets of the estate of Marion E. Griffin.

Several reasons are urged why the ruling of the lower court, holding that the city of Spencer was entitled to the payment of its claim, should be affirmed; but we find it necessary to discuss only two.

Some time in April of 1930 the executors filed a report and application which included, among other things, the following:

"That the will of said testator provides that these executors shall conduct the banking business of said estate so long as it

shall serve and facilitate the general and specific purposes of the will. And up to the present time the executors have found the said bank a safe depository for its funds and an instrument to help and facilitate the administration of the estate. But they believe that it would be well and advantageous that the proceeds of the sales of real estate be devoted to taking over the slow bills receivable thereof and liquidate said bank, paying off its depositors and closing the same as expeditiously as . practicable and as the court may direct. * * *

"That it will be to the advantage of the administration of said estate that the court determine the rights, duties and responsibilities of said executors to the beneficiaries under the will and as to the residuary estate provided for in the will, and they ask such instructions and directions by the court as will serve to facilitate the administration of said estate and will be for the best interests thereof."

A notice of hearing was prescribed and given, and proof of service was made as prescribed by the order of court. Objections were made by Elsie Edwards, one of the present objectors. None of the other legatees appeared.

Thereafter, on May 27, 1930, the court made the following order, to wit:

"That the first obligation of said estate is to the depositors and creditors of the Bank of M. E. Griffin, and that said executors should proceed to accumulate funds from the sales of real estate, collection of securities and other sources to take over sufficient bills receivable of said bank to enable them to liquidate the same and pay off its obligations and to take over any property remaining in said bank after the settlement thereof in said estate for administration. And said executors are hereby authorized and directed to make settlement of the affairs of said bank accordingly."

Section 11956 of the 1931 Code confers jurisdiction upon the court to authorize executors and administrators to continue the prosecution of a business as follows:

"11956. Business continued—inventory. The court, in its discretion, may authorize an executor or administrator to continue the prosecution of any business in which the deceased was engaged at the time of his death, in order to wind up his affairs

with greater advantage, but such authority shall not exempt him from returning a full inventory and appraisement, and making reports, as in other cases.''

This court in the case of In re Estate of James B. Harsh, 207 Iowa 84, at page 86, 218 N. W. 537, 539, said:

''The statute does not require notice, and such requirement would manifestly frustrate its purpose. The closing of an active business, especially a banking business, is usually not only destructive of its value as a going concern, but depreciative of the property or stock in use and the capital invested in it, and if the estate is not financially strong may be a calamity to those interested in the estate and to the public.''

Then, with reference to this statute the court further said, at page 87:

''The exercise of the power granted by the cited section of the Code is a matter of administrative procedure expressly committed to the discretion of the court. The court had jurisdiction and statutory authority to authorize the administrator to continue the business. If the order was too broad, it was not thereby void. The estate was *in custodia legis* in proceedings quasi *in rem,* and those interested, chargeable as they were with notice, should move for correction. The order, however, must be construed in connection with the business which was to be continued, a banking business in which was used all of the property of the decedent. It must be construed in connection with the business as it appeared upon the apparently complete records thereof to be.''

In the case at bar no one filed any objections to the order entered except Elsie Edwards. The executors continued to operate the bank thereafter, using the estate funds to take out the bills receivable. The treasurer of the city of Spencer was one of the executors. He knew, of course, of the order, and as treasurer of the city continued to make deposits in the bank obviously with the belief and with the understanding that in the distribution of the estate the claims of depositors in the bank would be recognized in accordance with that order. The order has never been appealed from, and its validity has never been challenged. The city of Spencer had a right to rely upon this

order and to assume that the court recognized the rights of the depositors to be paid from the general assets of the estate. It acquired a substantial right under this order that is binding upon all parties who are now urging that only bank assets may be resorted to for the payment of this claim.

There is a second reason why the claim of the city of Spencer should be paid out of the general assets of the estate. In the statement of the bank the testator carried an account in an amount of more than $150,000 in his name. That money was withdrawn by the executors in payment of costs of the administration, not connected with the management of the bank entirely, but with the terrific expense incurred in the litigation covering the Elsie Edwards matter. If that money had not been withdrawn, there would have been sufficient money in the bank to have paid the deposit of the city of Spencer. When the will was drawn in 1924, Mr. Griffin was well aware of the difficulties that were confronting banks in Northwestern Iowa. He had seen the weaker banks around his institution close their doors. He at that time had more than $215,000 worth of bills receivable, which he must have known did not constitute a source for payment of depositors excepting as collections might be made. If these notes were not collectible, it meant a loss to the bank, to him, or to his estate. The record shows that in addition to the item which he carried on the books of the bank as capital, amounting to $25,000, he carried this deposit in his favor in an amount of over $150,000. The record is not very complete as to the history and nature of that deposit. However, it does appear that the bank statement carried no item of surplus or undivided profit, and the inference is pretty clear that the earnings of the bank were carried in the account of M. E. Griffin, who was the owner of the bank. The bank was a pioneer institution. It grew with the community. Griffin was a conservative business man—just such a man who would plow earnings back into the business to strengthen it. This large deposit was not one which was suddenly made for a temporary purpose, but was a fund which the testator had been accumulating and carrying in the bank for a good many years, set up on the books as a checking account. It seems idle to say that the funds represented by that account were not embarked by the testator in the banking business. He was using that fund to carry on his banking business; to facilitate the operation of that business. The fact that

he carried it on the books as a deposit rather than capital can make no difference. The bank was a private bank, owned entirely by M. E. Griffin. There was no requirement which made it necessary for him to set up on the books any capital at all. All of his funds embarked in the business might have been carried as a deposit in his own name, but they would not on that account be less embarked in the banking business than if they were carried in a capital account. The deposit obligations of the bank were his debts. He did not owe himself, but he did owe all the other people who had deposits in the bank. The money that he put into the bank, to aid in carrying on the banking business, however he may have carried it on the books, was money which he embarked in the business. It can hardly be claimed that he carried an amount of over $150,000 in a checking account over a long period for any other purpose than as a means of using that fund in the banking business. The executors withdrew this account. From it they paid bills of the estate, and among other items paid out of that account were the amounts paid for attorneys' fees in the Elsie Edwards matter, totaling more than $55,000. These items were properly payable out of the general assets of the estate.

The lower court was right in holding the executors should be authorized to mortgage the real estate belonging to the Griffin estate to secure funds in an amount necessary to liquidate the deposit of the city of Spencer.

II. We now come to the second question which is before this court, and, to say the least, it is an extremely troublesome one. Are Elsie Edwards and Grace L. Stevenson claimants against the estate, or are their claims which arise out of stipulations of settlement made by them in the year 1927 payable solely out of the residue of the estate after other claimants and specific bequests are paid in full? In the course of the administration of the estate, Elsie Edwards and Grace Stevenson made the claim that they were children of Marion E. Griffin, and as children they were entitled to inherit; that the will of Marion E. Griffin was in violation of the prohibition of the statute, in that it disposed of a greater proportion of the estate to charity than is permissible thereunder. These claims were made back in 1926 and 1927. The claim of Elsie Edwards was in the process of trial. The executors on the 24th day of May, 1927, for the purpose of compromising and finally settling all

matters in controversy between Elsie Edwards, who was the plaintiff and claimant, and the executors, who were the defendants, entered into a stipulation, which was duly signed by the claimant and by the executors. Thereafter, on the 28th day of July, 1927, a similar stipulation was entered into, settling and compromising the claim of Grace Stevenson. At the time these stipulations were entered into, it was the belief of all parties that there was sufficient money to pay not only the creditors of the estate, but to pay the legatees and the devisees and that there would be left, after the payment of all debts and legacies and bequests, a sufficient amount to set up trust funds to pay the annuities to these girls, as stipulated. Unfortunately, due to the changed conditions, over which none of these parties had any control, and due to the terrific expense incurred by the estate in hiring of lawyers and in payment of executors' fees, it now appears there is not sufficient to pay the creditors of the estate, those entitled to receive under the will—to wit, the specific legatees—and to set up the sum of money necessary to provide for the annuities for these girls in accordance with the stipulations.

The material part of the stipulation entered into is as follows:

"6. That the said executors will within a reasonable time turn over to some charitable, religious, benevolent, educational or kindred eleemosynary institution within the State of Iowa, as approved by the District Court of Clay County, Iowa, the sum of Twenty-five Thousand ($25,000.00) Dollars or property of that agreed value, pursuant to the provisions of Item LXIV of the last will and testament of the said Marion E. Griffin, deceased, the said donee institution, however, being charged with the obligation to pay to the said Grace L. Stevenson or her said guardian during the natural lifetime of the said Grace L. Stevenson an annuity of about four per cent (4%) on the said sum of $25,000, the said annuity to be as large a percentage as possible consistent with safety and security; the executors meanwhile undertake and agree to pay the equivalent of said annuity of 4% out of the funds of said estate until such time as the said fund is turned over to such institution in accordance with the terms hereinbefore stated, the executors to make said payments to the said Kathryn Stevenson, Guardian, during the

term of her guardianship, and thereafter to the said Grace L. Stevenson in semi-annual installments.''

Elsie Edwards and Grace Stevenson in their brief and argument concede that as to the setting up of the trust fund, to wit, the $25,000, that cannot be done except out of the residuary estate:

''The appellants do not claim that these provisions of the stipulations providing for the establishment of these funds give them any right to resort to property other than the residuary estate, and in so far as the court ruled that they must look to the residuary estate for the establishment of these funds, they do not now complain.''

But they say the stipulations provide in no uncertain language that the annuities are to be paid out of the assets of the estate until the trust funds are provided for.

''6.   * * * the executors meanwhile undertake and agree to pay the equivalent of said annuity of 4% out of the funds of said estate until such time as the said fund is turned over to such institution * * *.''

The appellants claim this is a definite promise upon the part of the executors as representatives of the estate to pay a fixed sum out of the funds of the estate, that is, 4 per cent on $25,000, until such time as the executors shall relieve themselves of such payment by the establishment of the trust. It is very clear that the latter part of this stipulation provides, not for the payment out of the residuary estate, but out of the current funds, and that at the present time appellants are not making claim for setting up of the trust fund, but only for the annuity which the estate agreed to pay them until the trust funds are established.

We are not now confronted with the question of whether the stipulations of settlement entered into back in 1927 with these girls were advisable or not. Since that time these stipulations have never been attacked in any manner. These two girls settled what they no doubt believed to be just claims against the estate for these sums of money. The executors, acting for the estate, believing it no doubt to be to the advantage of the estate to make these settlements, entered into the stipulations, which stand here unchallenged.

Only two issues were submitted to this court. The first has

been considered in the foregoing part of this opinion. The second is: "Are Elsie Edwards and Grace L. Stevenson claimants against the estate, or are their claims which arise out of stipulations of settlement made by them in the year 1927 payable solely out of the residue of the estate, after other claimants and beneficiaries are paid in full?" The question of whether or not the executors had a right to enter into the stipulations that they did enter into is not therefore before this court at this time. The sole question is the construction of the stipulations.

We would have no trouble in arriving at the conclusion reached by the executors and by the legatees under the will, and the finding of the lower court that the funds to which these girls are entitled are to be paid out of the residuary estate, if it were not for the following provision of the stipulation, which, after providing for the establishment of the funds, says:

"The executors meanwhile undertake and agree to pay the equivalent of said annuity out of the funds of said estate until such time as the said fund is turned over to such institution in accordance with the terms hereinbefore stated, the executors to make said payments in semi-annual installments."

What was meant by this provision of the stipulation? That the annuity was to be paid out of the residuary estate? True, at the time the stipulation was entered into they all believed there would be a residuary estate, but they were not to wait until it was ascertained that there would be one before the payments were to be commenced. The executors bound themselves to pay out of the funds of the estate until these trust funds were set up, semiannually, these annuities.

When these stipulations were made, no doubt the executors had in mind that they were being made for the benefit of the charitable institutions, for, if these girls had been able to maintain the position which they claimed, that they were daughters of Griffin, then, under the laws of this state, the charitable institutions would have been deprived of a large amount left to them under the will of Griffin. And, in order to settle this matter, the executors entered into the stipulations with these two girls, stipulations that provided for the immediate payment of the annuities, semiannually.

Whether or not it will be possible to set up these trust funds provided for in the stipulations, this court is not now in a posi-

tion to say; but under these stipulations it is the duty of the executors to pay these two girls the annuities due them, until such time as the trust funds can be set up in accordance with the stipulations.

Since the amount of the estate necessary to pay the costs of administration and debts against the estate, and bequests to non-charitable institutions, is not involved in the controversy, it is not affected by the settlement, and therefore all such obligations of the estate should be met as though no stipulations existed. But after they are paid, then Elsie Edwards and Grace Stevenson are entitled to the payment of the annuities due them in accordance with the stipulations of settlement entered into, before the payment of any of the bequests, specific or residuary, are made to charitable institutions.

The decree of the lower court is so modified.

Affirmed in part; reversed in part.

On the appeal of the cross-appellants, judgment and decree of the lower court is affirmed.

KINTZINGER, C. J., and ANDERSON, DONEGAN, PARSONS, HAMILTON, and RICHARDS, JJ., concur.

ALBERT, J., dissents as to second division of the opinion.