J. W. Nichols, Appellant, v. Grace S. Harsh, Administratrix, Appellee (and 87 other cases).

**EXECUTORS AND ADMINISTRATORS:** Claims—Contingent Liabilities. A contingent claim based on a guaranty by a deceased of payment of an unmatured promissory note is barred if not filed against the estate within twelve months from the giving of notice of the appointment of administrator.

**EXECUTORS AND ADMINISTRATORS:** Claims—"Peculiar Circumstances" Avoiding Bar. The holder of a claim against an unsettled and solvent estate will be permitted to file and prove his claim *after* the expiration of twelve months from the giving of notice by the administrator (1) when he had never visited the place where the deceased did business, and lived a great distance therefrom, (2) when his claim is "contingent," (3) when he justifiably believed, and was led to believe, that his claim was against a banking corporation, and (4) when he finally discovered that the assumed bank was only a "trade name," and that the deceased was the sole owner of the business, and the real contingent debtor; and this is true even though the claim holder *might* have discovered the actual facts within said twelve-months period.

Headnote 1: 24 C. J. p. 325. Headnote 2: 24 C. J. p. 366 (Anno.)

*Appeal from Union District Court.—A. R. MAXWELL, Judge.*

JUNE 21, 1926.

Action upon a claim filed against the estate of J. B. Harsh, deceased. The claim was not filed within twelve months after the giving of the notice of the appointment of the administratrix of said estate. The court disallowed the claim, and dismissed the same, and the claimant appeals.—*Reversed and remanded.*

*Carr, Cox, Evans & Riley,* for appellant.

*Higbee & McEniry,* for appellee.

FAVILLE, J.—I. It appears that for many years the decedent, J. B. Harsh, operated a private bank in the city of Creston, Iowa, under the name of the Land Credit Bank. It now appears that Harsh was the sole owner and proprietor of said bank, and that the name "Land Credit Bank" was a mere trade name used by the said decedent. On or about the 23d day of April, 1920, one Mathews and his wife executed and delivered to the said Land Credit Bank a promissory note for the principal sum of $1,200, bearing interest at the rate of 6 per cent per annum. The note recited that it was secured by a mortgage, or deed of trust, which is a first lien on real estate in St. Claire County, Missouri. The note was due May 1, 1925. Before maturity, the Land Credit Bank transferred said note to appellant by written indorsement thereon, which is as follows:

1. EXECUTORS AND
ADMINISTRATORS:
claims: con-
tingent lia-
bilities.

> "Creston, Iowa.                              May 10, 1920.
> "For value received, the Land Credit Bank hereby sells and assigns the within bond or note and coupons thereto attached to J. W. Nichols, and guarantees the payment of the same within two years from maturity, with interest.
>
> "Land Credit Bank
> "Attest: H. T. Scurr,                   By J. B. Harsh,
>     "Cashier.                              President."

Appellant's claim against the estate of Harsh was filed December 11, 1924, and he alleged that said note did not mature

until May 1, 1925, and that whether the said note would be paid when due he had neither knowledge nor information sufficient to form a belief, but asserted that, in the event that said note was not paid when due, he relied upon the said guaranty of Harsh. It is also alleged, and shown by the record, that, at the time of the filing of said claim, the estate of the said decedent was open and unsettled. The prayer of appellant is that the said claim may be allowed as a valid claim against the said estate, and that the assets of said estate be not distributed so long as any liability, contingent or otherwise, may exist by reason of said claim.

Harsh died June 19, 1923. Appellee was appointed and qualified as administratrix of his estate, and gave due notice of her appointment as such administratrix on July 9, 1923. Appellant's claim was not filed until December 11, 1924. Under the statute, it being a claim of the fourth class, it was not filed within time for allowance. Section 11972, Code of 1924. Appellant urges two grounds upon which he claims that the statute of limitations with regard to the filing of fourth-class claims should not be available against him. First, it is appellant's contention that said claim is a mere contingent claim, and that it is not necessary that the same be filed within twelve months; and, second, it is urged that there are "peculiar circumstances" which entitle the claimant to equitable relief in respect to the time of filing said claim, as contemplated by Code Section 11972.

Section 11964, Code of 1924, is as follows:

"Demands not yet due may be presented, proved, and allowed as other claims." •

Code Section 11965 is as follows:

"Contingent liabilities must be presented and proved, or the executor or administrator shall be under no obligation to make any provision for satisfying them when they accrue."

We have held that the section providing that claims of the fourth class shall be filed within twelve months from the giving of the notice does not apply to certain so-called "contingent claims" against an estate, under certain circumstances. The holding is not, however, to the broad and general effect that any and all "contingent claims" against an estate may be filed after the twelve-months period. There is no such pronouncement. A few citations will illustrate.

In *Savery v. Sypher*, 39 Iowa 675, we considered claims

that did not exist against the estate in any form at the time of the decedent's death, but arose thereafter, and we held that such a "contingent claim" was not barred by the statute.

In *Wickham v. Hull*, 102 Iowa 469, the action was upon the claim of a receiver for assessment upon stock in a national bank. The record showed that, at the expiration of the time allowed for filing claims, the bank was open, and transacting business in the usual way, and thereafter suspended; and we held that the "contingent liability" for an assessment upon the stock was not barred by the statute, under such circumstances. We said:

"This claim did not exist at the time of Mr. Hull's death, but has arisen since, as a liability against his estate."

In *Security Fire Ins. Co. v. Hansen*, 104 Iowa 264, there was involved the liability of a surety on the bond of an insurance agent. The action was against the heirs of the surety, and was brought after the estate was closed. By the terms of the bond, the obligor bound his heirs, executors, and administrators. We held that the claim was not subject to the limitations provided for in the section.

Other cases might be cited. An examination of the authorities discloses that the so-called "contingent claims" which it has been held can be filed after the statute of limitations has run, are all cases of an entirely different character from the claim in the case at bar.

The terms "contingent claim" and "contingent liability" are not easy of accurate definition, and are frequently used without technical accuracy. Nor are said expressions always used in the same sense and with the same meaning. To illustrate: A party executes a warranty deed, with the usual covenants running with the land. Immediately upon the execution and delivery of said deed, there is a "contingent liability" on the part of the covenantor for a breach in the covenants of the deed; but no "contingent claim" for any such possible future liability could be filed against the estate of the covenantor. *Reed v. Pierce*, 36 Me. 455. Again, the case of *Wickham v. Hull*, supra, is a good illustration of this general class of so-called "contingent liabilities" or "contingent claims." The owner of stock in a national bank has a "contingent liability" at all times that the bank may become insolvent, and that he may be subject to an assessment on this stock. But no claim could be filed

against the estate of such a stockholder until the necessity for such assessment had been determined and fixed. Such a claim, however, is referred to as a "contingent claim," and the liability as a "contingent liability."

We might multiply the illustrations of this class of so-called "contingent claims," growing out of "contingent liabilities." We have held, and properly so, that claims growing out of "contingent liabilities" of the general kind and character above referred to, are not within the class of claims that must be filed within the statutory period of limitations. Such contingent claims need not be filed until the liability arises in some form against the decedent or his estate. It is not true that, because claims of this kind are sometimes, and often, referred to as "contingent claims," or claims arising out of "contingent liabilities," and are held not necessarily to be barred by the statute of limitations, any and all claims that are designated as "contingent claims" or that arise out of a "contingent liability" can be filed against an estate, regardless of the statute of limitations.

Code Section 11965 expressly recognizes the necessity of filing claims based on "contingent liabilities," and requires that such claims must be presented and proved within the statutory period, or the executor or administrator shall be under no obligation to make any provision for satisfying them when they accrue. The claim of appellant is not in the general class of so-called "contingent claims" first above referred to, but it is clearly within the class of contingent claims intended to be and in fact covered by the provisions of Section 11965.

It is true that the liability of a guarantor on a promissory note is secondary, and not primary. His obligation is to pay the debt in the event that the debtor cannot do so. The undertaking is collateral. *First Nat. Bank v. Drake,* 185 Iowa 879. But there is a definite obligation outstanding from the moment of the execution of the contract of guaranty. In a quite proper sense, it may be said that the guarantor is at all times from the inception of the instrument a "debtor" thereunder. Although his liability may be secondary, there is a continuing liability under the obligation from the inception of the instrument.

The owner of stock in a bank is, however, not a debtor by virtue of being such stockholder, until an assessment has been made upon his stock. The covenantor in a warranty deed is not

a debtor, and is under no obligation to pay, until the covenant is in fact breached. The surety on a bond is not a debtor, nor liable as such, until the conditions of the bond are broken. But the absolute guarantor on a negotiable promissory note is under a direct and positive obligation thereon, and is in a quite proper sense a debtor at all times after the execution of the contract of guaranty. The amount of his indebtedness may eventually be determined by a ''contingency,'' but there is a continuing obligation to pay.

We are of the opinion that the obligation of a guarantor on a promissory note is one of the very ''contingent liabilities'' contemplated by the statute, which must be presented and proved within the time fixed thereby. In order, therefore, for appellant to preserve and secure his claim against the estate of the decedent, it was essential that said claim should be filed as a claim against the estate of the decedent within the statutory time allowed for filing claims. The same result is obtained whether we treat the obligation as a ''contingent liability'' of the class described or as ''a debt not due.'' The contingent liability of the decedent as a guarantor upon the note was exactly the same at the date of his death as it was at the time of the filing of the claim.

Appellant places reliance upon the case of *In re Estate of Mardis,* 148 Iowa 740, where the decedent was the guarantor of certain bonds, and a claim was filed against his estate and permitted to be established, for his contingent liability. The opinion does not disclose the date when said contingent claim was filed, but an examination of the record in this court discloses that it was filed within the statutory period. The case is in full harmony with our conclusion herein.

At this point we hold that the claim of appellant was of such a kind and character that it was necessary for appellant to file the same within the statutory period allowed for the filing of claims.

II. The statute provides that all claims of the fourth class which are not filed and allowed within twelve months from the giving of the notice of the appointment of the administrator may

**2. EXECUTORS AND ADMINISTRATORS: claims: "peculiar circumstances" avoiding bar.** still be filed and allowed where "peculiar circumstances entitle the claimant to equitable relief." Section 11972, Code of 1924. Are there such "peculiar circumstances" in the instant case as relieve and excuse appellant from the necessity of filing his claim within the statutory period, and entitle him to equitable relief?

Appellant lives at Farmington, Maine, about 2,000 miles from Creston. The evidence shows that he never was in the city of Creston until the time of the trial of this cause. He had done business with the Land Credit Bank for about thirty-two years. He testified that at all times his relations had been most satisfactory, and that he had full faith and confidence in said bank; that he had advised other people to purchase paper from said bank, and a number had done so. A number of letters from the said Land Credit Bank to appellant were offered in evidence. These cover a considerable period of time prior to the death of Harsh. All of said letters, including the one which inclosed the note in suit, were upon letterheads in the following form:

"J. B. Harsh, President.                    H. T. Scurr, Cashier.
          " (President Creston National Bank).
"Deals in first Land Credit Bank mortgage real estate securities made to this bank as mortgagee, and guaranteed by it when sold.
"Interest paid Depositors.                    'The banking system
"at rate of 3, 4 and 5 per ct.                    of the Future.' "

The letter which forwarded said note and mortgage to appellant was signed "Land Credit Bank, H. T. Scurr, cashier."

On the 9th day of July, 1923, upon application of the administratrix, an order was entered in said probate matter authorizing and directing the administratrix to continue all of the business of the Land Credit Bank at Creston, Iowa, "in accordance with the terms and conditions and previous management of said business." On July 18, 1923, under the letterhead above set forth, the daughter of the decedent wrote appellant the following letter:

"Creston, Iowa.  July 18, 1923.

"Dr. J. W. Nichols,

    "Farmington, Maine.

"My dear Mr. Nichols:

    "I am very sorry to be obliged to write you of my father's death, which occurred June 19th.  My father was in ill health ever since an attack of 'flu' a year ago last March.  Last fall and winter, after some very severe illness, the examining physician pronounced a tumor in the splenic region to be the cause of his illness, and gave us no hope of his recovery.  Of course, we could not give up and tried everything possible, but to no avail, for after many months of suffering, he finally passed away the 19th of June.

    "I remember very distinctly my visit to Farmington, Maine, with my father, and the pleasant times I spent with your mother, your father, and your sister and her husband, Dr. Hunter, and yourself and wife.

    "I know the many years of business relations which my father had with you, and I am hoping that these relations will remain the same since his death.  My cousin, W. J. Donlin, who was many years associated with my father in the Creston National Bank, will return to Creston at my father's request and assist me in the administration of the estate, and assume the vice presidency of the Land Credit Bank.  Mr. Scurr will continue as cashier, and we hope to serve you as well and faithfully as my father has in the past.

    "With kind personal regards, I remain,

                "Sincerely yours,

            "G. S. Harsh, Pt. (Grace S. Harsh)"

    It appears that thereafter the administratrix remitted to appellant items of interest that were due to him on loans which he had purchased from the said Land Credit Bank.

    On January 25, 1924, upon the same letterhead, the administratrix wrote to appellant as follows:

    "We are writing you today, to inform you that Mr. H. T. Scurr, who has been with us the past twelve years, is leaving the first of February to engage in business with his father.

"We know that you, with us, will regret his going, but wish him success.

"Please address all mail to the Land Credit Bank, and it will receive the same prompt attention as heretofore.

"My duties as vice president of the Creston National Bank are about the same as during my father's lifetime, and in no way interfere with my continued personal attention to the business. of the Land Credit Bank.

"Very truly yours, Grace S. Harsh, President."

It appears that the interest items were paid promptly on the first of every month, but on August 1, 1924, there was a default in some of the coupons. On September 15, 1924, appellant wrote, or caused to be written, a letter to the administratrix in regard to the nonpayment of interest coupons, and inquiring in regard thereto. On September 22, 1924, the administratrix replied to said letter, and said:

"During my father's lifetime, as you say, all the interest was paid promptly on the due date, and we continued the same plan. Recently, we mentioned this fact to our attorneys for the estate, and they informed us that as administratrix, I should send the interest as collected, but not advance it. Accordingly, we did not advance the interest.

"We are using our utmost endeavor to collect the interest and will forward as soon as paid in each case. All of these mortgages were made before the present management took charge. Mr. Donlin is seeking the facts in each case of slow interest. The agricultural depression seems to make it difficult for the farmers to meet their interest. Gentlemen, Higbee & McEniry are the attorneys for the estate, and if there are any legal questions which you wish to ask, I am sure they will be glad to answer."

Appellant testified that he first learned that the Land Credit Bank was only a trade name of J. B. Harsh the latter part of October or the first of November, 1924, when he received the information from one Austen. It appears that Austen received a letter written September 29, 1924, from W. J. Donlin as vice president, which letter, it appears, came into the hands of appellant, and contained the following statement:

"I was not connected with this bank when the loan was

made. The Land Credit Bank was a trade name for J. B. Harsh. Mr. Harsh died June 19, 1923, and his estate was administered by his daughter, Grace S. Harsh, during the following year. We are not selling loans now with a guarantee, and our attorneys advise us to disregard all guarantees of loans.''

Commencing September 1, 1923, remittances—some fifteen in number—were sent to appellant in the form of drafts. Said drafts have been certified to this court, and we attach hereto the original of one of said drafts, Exhibit No. 1.

<div style="margin-left:2em; border:1px solid;">

LAND CREDIT BANK          No. 46112

Being the Trade-name of J. B. Harsh, deceased

Creston, Iowa, Sep. 1, 1923

Pay to the order of J. W. Nichols..............$56.00

Fifty-six ................................Dollars

To The National City Bank of Chicago,

2-22          Chicago, Ill.

Grace S. Harsh, Admrx.

</div>

*(left margin, vertical text: H. T. Scurr, Cashier)*

Said drafts were duly indorsed by appellant. It appears that said drafts were all issued on the first day of the month, with one exception (which was on the third), until August, 1924, the draft in that month being dated August 8th.

The question at this point is whether, under the record, there were such ''peculiar circumstances'' as entitle appellant equitably to be allowed to file his claim, notwithstanding the bar of the statute.

At the time appellant filed his claim, the estate of the decedent was open and unsettled, and we think it fairly appears from the record that the estate was solvent. Appellant acted promptly and within a reasonable time after he in fact knew that the Land Credit Bank was a mere trade name for J. B. Harsh, and that he was entitled to file his claim against said estate. He cannot be charged with negligence or laches after he was definitely informed of said fact, if we assume at this point that the first he knew that the bank and Harsh were identical was the latter part of October, or the first of November, 1924, as testified to by him. As early as September 1, 1923, however, appellant received the draft above set forth, and it is contended by appellee that the recitals in said draft, ''Land Credit Bank, trade name of J. B. Harsh, deceased,'' and the fact that the

same was signed by "Grace S. Harsh, Admrx.," were sufficient to apprise appellant that the Land Credit Bank was a mere trade name for J. B. Harsh, and that the said Grace S. Harsh was administratrix of his estate; and that appellant was guilty of negligence in not filing his claim within the said twelve months after he received the information contained in said check. Appellant testified to the effect that he did not examine said checks carefully, and did not notice the recital thereon, "trade name of J. B. Harsh, deceased," at the time he received the same, and not until after the twelve months had expired.

The fact that appellant received a number of drafts bearing this statement is a strong circumstance against him in his contention that he did not know that the said Land Credit Bank was a mere trade name for the individual J. B. Harsh, within time to have filed his claim against the estate of the said Harsh. But other circumstances surrounding the entire case lead us to the conclusion that appellant ought not, in equity, to be barred from his right to file his claim against the estate of Harsh merely because of the recitals in said checks. The letterheads upon which correspondence had been conducted for many years would readily lead one who was not familiar with the facts to assume that the Land Credit Bank was a corporation, and not the trade name of a private individual.

But in addition to this, the letter of the administratrix written to appellant shortly after the death of the said J. B. Harsh contains no hint or suggestion that the bank was a mere trade name for the said decedent, but the inference is quite to the contrary. It contains the statement that W. J. Donlin was to "assume the vice presidency of the Land Credit Bank," and that "Mr. Scurr will continue as cashier." She signs as president of the bank. There is never a suggestion of any kind from the administratrix to appellant, until after the twelve months from the time of the notice of her appointment had expired, that the Land Credit Bank was a private institution, and a trade name for decedent. It is difficult to believe that this was mere oversight. Remittances were made by the drafts above referred to, it is true; but no letter or information in any way, outside of the draft itself, attempted to call any attention to the fact that the Land Credit Bank and J. B. Harsh were identical. It was only shortly after the twelve months expired that a definite an-

nouncement was made that they were so identical. Appellant lived a long distance from Creston; he had never been there, and had conducted business with the Land Credit Bank for many years. He was informed by the administratrix that J. B. Harsh, who had appeared as president of said bank, was deceased, and that another had succeeded him as president, and that a vice president had been appointed. He was notified that there had been a change in cashiers. There was not a hint or suggestion 'in any of the correspondence, until after the twelve-months period had expired, that would lead him to believe that during all of this time he had been dealing with an individual.

The relief granted in cases of this kind is made by statute to depend upon "peculiar circumstances," entitling the party to equitable relief. No element of estoppel is involved herein; the rights of no other parties have intervened because of any act on the part of appellant; the estate is unsettled and open for proper distribution among the legitimate creditors; there is no contention that appellant's claim is not valid; and the estate appears to be solvent. In view of all of the facts and circumstances disclosed by this record, we are constrained to hold that appellant has established such peculiar circumstances as, under the record, entitle him to the equitable relief of being allowed to file his claim against said estate, notwithstanding the bar of the statute of limitations. Every case must, of necessity, under this statute, be governed by the "peculiar circumstances" pertaining to it. We should give this statute a liberal construction, in order to effectuate justice. Such is its clear purpose and intendment. As bearing somewhat on the conclusion herein reached, see *McCormack v. Cook*, 11 Iowa 267; *Brewster v. Kendrick*, 17 Iowa 479; *Johnston v. Johnston*, 36 Iowa 608; *Senat v. Findley*, 51 Iowa 20; *Pettus v. Farrell*, 59 Iowa 296; *Lamm v. Sooy*, 79 Iowa 593; *Sankey v. Cook*, 82 Iowa 125; *Ury v. Bush*, 85 Iowa 698; *Henry v. Day*, 114 Iowa 454.

It follows that the order of the trial court denying appellant the right to file said claim must be, and it is, reversed, and the cause is remanded for further proceeding in accordance with this opinion. It is so ordered.—*Reversed and remanded.*

DE GRAFF, C. J., and STEVENS and VERMILION, JJ., concur.