C. W. SMALLWOOD, Assignee, Appellee, v. JOHN H. O'BRYAN et al., Executors, Appellants.

No. 39666.

June 24, 1929.

*Thomas Hickenlooper* and *Miller & Everett,* for appellants.

*Mabry & Mabry* and *Bates, Simmons & Richmond,* for appellee.

Wagner, J.—T. B. O'Bryan died testate April 24, 1925. The executors of his estate were appointed May 18, 1925, and duly qualified as such, and in accordance with an order of the court, gave notice of their appointment, the last  publication in the newspaper occurring on the 28th day of May, 1925. The decedent was indebted to the Lovilia Exchange Bank on three demand notes in the principal sums of $1,500, $461, and $183.50, all of which were made payable at said bank, and were executed in December, 1924, as renewals of previous notes executed by decedent to said bank. This banking institution was conducted as a private bank by a copartnership, the members of which were Jerry Wilcox, the president, H. M. Wilcox, the cashier, and O. L. Wright, who was also an officer in a bank at Knoxville. On December 26, 1926, the copartnership and the individual members made an assignment to the claimant for the benefit of creditors. Thereafter, the assignee filed a claim which is provocative of this litigation. It will be observed that

the claim was filed more than twelve months after the giving of the notice of the appointment of the executors, and they rely upon that fact as constituting the statutory bar mentioned in Section 11972 of the Code of 1924.

The assignee, in the claim filed, sets out allegations of fact which he contends constitute "peculiar circumstances" entitling him to equitable relief, within the exception contained in the aforesaid statutory provision. Upon motion of the executors, the issue thus arising was transferred to and heard in equity. Upon trial as to this issue, the court found for the claimant, and adjudged and decreed that, in case of failure or refusal of the executors now to allow and approve said claim, the claimant is authorized and empowered to proceed to the approval and establishment of said claim against said estate, in accordance with the provisions of law relating to the establishment of claims against estates without objection on the part of the executors of said estate as to the time of filing the claim. From this action by the trial court, the executors have appealed.

It is thus apparent that the sole question for our determination is as to whether or not the claimant has shown "peculiar circumstances," within the meaning of the exception in Section 11972 of the Code, entitling him to relief as against the belated filing of the claim. We deem it unnecessary to set out the evidence *in extenso*, and for the sake of brevity, will, to some extent, state our conclusions, which we find established by a preponderance of the evidence. It appears that the bank in Knoxville of which Wright was one of the officers had been handling as rediscounts some of the notes of the Lovilia Exchange Bank, including one of the notes in controversy. In October, 1925, the Knoxville Bank turned back said note to the Lovilia bank. With the letter returning the note, Wright sent a blank claim, saying that a claim should be filed against the estate. This letter was opened by the cashier, and the letter, with the blank claim, was handed to his father, the president of the institution, who immediately took the blank claim to the place of business of Swan, in Lovilia, and talked to him about fixing up the claim and filing it against the estate. Swan informed the president that it was not necessary to file a claim, but that the matter would be taken care of at the bank; and the president returned to the bank, and informed his son, the cashier, as to the transaction between him and the execu-

tor. On December 14, 1925, Swan appeared in the bank and gave his check, as executor, in the amount of $291.52, which was the amount required to pay the interest then due on the three notes. At that time, there was talk between the cashier and the executor relative to the filing of a claim, and the executor informed the cashier that it would not be necessary to file a claim, as the notes would be paid in 60 or 90 days. Again, in March, 1926, a conversation was had between the cashier and said executor at the bank, and the executor again informed the cashier that it would not be necessary to file a claim; that he expected to have money from a certain source with which to make payment in a short time. While the executor denies making these statements and promises, a careful reading and re-reading of the record convince us that the preponderance of the evidence as to these matters is with the claimant. The officers of the bank had the blank claim; the president went to the executor with said blank; and the stubborn fact remains that the executor paid the annual interest without the filing of a claim, which fact is corroborative of the president and the cashier. Both the former president and the cashier testified that they relied upon the executor's promises of payment and statements that it would not be necessary to file a claim, and that the claim would have been filed within statutory time, had it not been for the executor's statement that it would not be necessary to file a claim. After the assignment by the bank to the claimant for the benefit of creditors, the claimant interviewed Swan, the executor, and he then suggested that he file the claim, and the executors would consider the matter. Thereupon, the claim was filed, and notice given. The estate is solvent, and still remains unsettled. While there has been a decree of partition of some of the real estate, the arrangement is that, if it is necessary to use any of the proceeds that come from the sale of the land to pay debts, it will be turned to the executors for that purpose. One of the executors is the referee in said suit.

Are the foregoing facts sufficient to prevent the operation of the statutory bar relied upon by the executors? We answer in the affirmative. We have heretofore held that no general rule can be laid down upon this subject, and that each case must be determined upon its own peculiar circumstances, in view of the rights belonging to those interested in resisting the claim and the duties devolving upon those seeking to establish it. We have held

that the fact that the estate is solvent and unsettled is a most controlling consideration. *Brewster v. Kendrick,* 17 Iowa 479; *Johnston v. Johnston,* 36 Iowa 608. In the *Brewster* case, supra, this court declared:

"But a most controlling consideration is that the estate remains unsettled. The assets have not been distributed, and had not when this claim was filed. That equality which is equity dictates as a rule that the assets of an estate should be paid to creditors in proportion to their demands. And when the estate remains undistributed, all should be paid, if there are sufficient means, * * * unless there exists some legal difficulty, or unless to so order would work injustice to others having higher or equal claims upon the funds."

In the *Johnston* case, this court declared:

"In this case, the estate is not only unsettled, but solvent, so that no injury can result either to creditors or others by the allowance of this claim."

In *Burroughs v. McLain,* 37 Iowa 189, this court made the following pronouncement:

"The evidence conclusively establishes that the note was not filed for probate on account of the promise of the administrator to pay it, and his statement to the party holding it that such a course was not necessary. He made certain payments which were indorsed as credits on the note. The holder of the paper was justified in relying upon the administrator's promises and statements, and now cannot be defeated because he indulged defendant and followed his directions."

This quotation is especially applicable to the facts in the instant case. The bank was justified in relying upon the promises and statements of the executor. His statements to the effect that it would not be necessary to file a claim, and that payment of the notes would be made at the bank, coupled with the fact that a payment on the notes was made at the bank, without the filing of a claim, are sufficient to excuse the failure to file a claim; and since the estate is solvent and unsettled, no injury can result to creditors or others by the allowance of the claim. For other authorities in support of our conclusion, see *Ball v. James,* 176

Iowa 647; *Nichols v. Harsh*, 202 Iowa 117, and cases therein cited.

The assignee stands in the shoes of his assignor, and the former can assert any rights as against this estate which could have been asserted by his assignor. For the reasons hereinbefore given, the judgment of the trial court is hereby affirmed.—*Affirmed*.

Albert, C. J., and Evans, Kindig, and Grimm, JJ., concur.