WILLIAM CAVE, appellee, v. WILLIAM FAHAN, individually and as executor of the Alex Fahan estate, and EDWARD S. WHITE, as administrator de bonis non of estate of Alex Fahan, Jr., appellants.

No. 49544.

(Reported in 92 N.W.2d 434)

October 14, 1958.

Edward S. White, of Carroll, for appellants.

Thomas L. McCullough, of Sac City, and M. R. Tan Creti, of Carroll, for appellee.

WENNERSTRUM, J.—On November 30, 1956, William Cave, the plaintiff, filed a petition in equity against parties interested in a decedent's estate wherein it was alleged he had suffered damages because of a collision of a car driven by Alex Fahan with a school bus, of which he, Cave, was the driver, and that he has a just and fair claim against the estate of Alex Fahan which has been closed. He asked that it be reopened in order that he might file a claim against it. It was pleaded several adjusters for an insurance company which had issued an automobile liability policy covering the decedent had stated they and their company would delay taking any action relative to a possible settlement until it could be definitely determined the extent of plaintiff's injury. It was further stated in the petition that by reason of the representations made no claim was filed against the estate of the decedent and the statutory time for filing one had elapsed. It was also alleged the insurance company now deny any liability on the part of the decedent and refuse to negotiate in regard to plaintiff's claim. The former executor of the Alex Fahan estate resisted the reopening of it. Thereafter the trial court, on the application of the plaintiff, appointed an administrator de bonis non to defend the petition to reopen the estate. This administrator filed an answer wherein it was pleaded the estate of Alex Fahan had been closed and the statutory time for filing claims against it had elapsed. It was further pleaded no person representing the estate or the executor had made any representations which induced the plaintiff to delay the filing of his claim during the statutory period allowed for said filing. It was also alleged the plaintiff was negligent in failing to file his claim and timely prosecute it. All the allegations in the administrator's answer were denied. The trial court, after hearing evidence on the application, authorized the reopening of the estate for the purpose of allowing plaintiff to assert his claim. The defendants have appealed.

Alex Fahan, the decedent, was the driver of a car which struck the rear of a school bus driven by the plaintiff. He claims he was thrown to the floor of the vehicle and injured and has been under continuous medical care since that time. A representative of the insurance company which carried the liability insurance on the car of Alex Fahan conferred with the plaintiff and asked him to assist in making settlement with the parents of the students who were on the bus. It is a further claim of the plaintiff the adjuster for the insurance company told him to go to a doctor. Various adjusters called on the plaintiff who informed him there was no hurry and to communicate with them or the company as soon as he was released from the doctor and they would then settle with him. Settlement has been made with the school board for the damage to the school bus. The insurance company also has made settlement with the parents of children injured.

The plaintiff learned an estate had been opened and later closed in October of 1956. At that time he conferred with an attorney and was advised he should hire a lawyer to have the estate reopened.

It is the claim of the defendants: (1) The plaintiff's claim is barred under the provisions of Code section 635.68, 1954 Code, and no peculiar circumstances have been shown which would entitle the plaintiff to equitable relief and the reopening of the estate; (2) the plaintiff was negligent in not filing his claim while the estate was open; (3) that no fraudulent statements were made by anyone which induced him not to file his claim; (4) the ownership of a liability insurance policy does not constitute peculiar circumstances which would entitle the plaintiff to equitable relief; and (5) any representation made to the plaintiff by an insurance company adjuster is not binding upon the Fahan estate or its executor.

We are here concerned whether there was proper and sufficient showing of "peculiar circumstances" which would "entitle the claimant" in the present case "to equitable relief" and permit the filing of a claim against the estate after the expiration of six months from the giving of the notice of appointment of the executor. Section 635.68, 1954 Code.

The plaintiff testified in regard to conferences he had with

the first insurance company adjuster who called upon him, as follows: "He took my statement of the accident, how it happened, a complete statement and I signed it. * * * I told him I had a headache, my back hurt and also in the neck. So he told me that I should go to the hospital or go to a doctor and get examined and that they wanted to get all our claims paid up. * * * He told me he was an insurance adjuster, that they had Alex Fahan's insurance * * * and that if I had any injuries to go to the doctor and find to what extent those injuries were. * * * I saw Mr. Heitzman several times after this first meeting. * * * He always found me at the station. We talked this thing over again with just the two of us present. * * * Mr. Heitzman told me that he wanted me to be sure and find the extent of my injuries and that if and when I was released—I was under doctor's care at the time—when I was released by the doctor he would take care of my claim. * * * He said 'When you're released we'll pay your claim.' * * * Mr. Heitzman saw me quite often that first month. * * * I didn't ask Mr. Heitzman to come to see me. He came himself. We discussed this same matter again on those occasions. * * * At that time they were under the impression that it was a whiplash back. That it would take quite some time. He said 'Yes, we know that takes quite some time and we want you to be completely well and released by the doctor.' He said 'We' would pay my claim and I just took it as that. He never, never said there was any hurry on the part of it, that they wanted me to be completely well and released by the doctor and then they would settle. * * * I saw other persons who represented themselves as representing the Alex Fahan estate or the insurance of the Alex Fahan car periodically during the summer of 1956. * * * These insurance adjusters who called on me in the summer of 1956 said they were adjusters from the * * * insurance [company], from the Alex Fahan estate. * * * They asked the usual question as to how I was feeling. * * * They told me that they would settle with me after the doctor released me and that they couldn't settle as long as the doctor didn't release me."

On cross-examination the plaintiff further testified: "The only one who asked me if I wanted to get my bills together and settle before the estate was closed was Heitzman and that was

the same day I found out that he had settled with the children on the bus. I told him I was still under doctor's care. I made no effort to discover whether this estate was opened. I made no effort to discover who its executor was because I thought it had no bearing on me. I thought it would have no bearing on me whatsoever because I was under the impression the insurance company would take care of my claim when I was released. I did not file any claim. I did not even know who the executor of the estate was."

The superintendent of the school for which Cave was the driver of the bus involved in the accident testified: "Mr. Heitzman stated that his insurance company was assuming all responsibility and that he would take care of all of the claims not only of the students, but the driver as well."

A Mr. Robert J. O'Donnell, an adjuster for the insurance carrier, later called on the plaintiff. He testified: "A. [We talked about] the medical expense and any loss of time and the incidental expenses of travel and one thing and another back to the various cities to see his doctor. That's pretty much the conversation on my first call. I was back to see Cave in two or two and a half weeks. * * * The last visit I had with Cave was on September 10. It was a short visit lasting maybe five minutes. I asked him if he had been to the doctor. He said he had. I asked him if the doctor had given him any encouragement as to when his treatments might come to an end and he replied that the doctor said he couldn't be sure."

The record in this appeal disclosed the estate of Alex Fahan consisted entirely of personal property which was valued at $21,619.07. It is admitted by the administrator de bonis non the decedent carried a liability insurance policy which provided the issuing company would indemnify the insured for all sums for which he would become legally obligated to pay as damages to the extent of $25,000 for one individual and a total of $50,000 for any one accident or occurrence. It naturally follows if the claim had been timely filed and, on trial, a judgment had been returned against the executor and estate, the insuring company would be obligated to indemnify the estate for all damages it suffered by reason of a judgment entered against it, but not to exceed $25,000 for damages to any one person.

1380

■ I. Whether there is a sufficient showing of "peculiar circumstances" which would entitle a claimant to "equitable relief" permitting tardy filing of a claim against an estate depends upon the facts and circumstances in each case. In re Estate of Smith, 248 Iowa 857, 861, 82 N.W.2d 737, 740; Rindfleisch v. Mundt Estate, 247 Iowa 1124, 1127, 77 N.W.2d 643, and cases cited; Gross v. Hocker, 243 Iowa 291, 300, 51 N.W.2d 466; In re Will of McPheeters, 233 Iowa 199, 204, 8 N.W.2d 588; Anderson v. Storie, 208 Iowa 1172, 1178, 227 N.W. 93, 66 A. L. R. 1410.

■ II. In order to establish peculiar circumstances' which would entitle a claimant to equitable relief in an action such as here involved there must be a showing claimant was diligent and had not been negligent in connection with the failure to file within the statutory time. Rindfleisch v. Mundt Estate, 247 Iowa 1124, 1128, 77 N.W.2d 643; Federal Land Bank of Omaha v. Bonnett, 226 Iowa 112, 123, 284 N.W. 97.

■ III. We have previously held the provisions of section 635.68 of the Code relative to permitting the filing of tardy claims should be liberally construed. Gross v. Hocker, supra, 243 Iowa 291, 299, 51 N.W.2d 466. That is, the facts presented, if at all justified, should be so construed in connection with the Code section as to effectuate justice.

■ It is our conclusion in this equity action there has been a sufficient showing of peculiar circumstances which would justify the application of the provisions of the Code section here involved and that the plaintiff has met the burden of proof. It is also our conclusion the plaintiff was not negligent in seeking to present his claim under the circumstances. If the representatives of the insurance carrier had not given the impression to the present claimant their company would settle with him he could have taken earlier action. The fact the insuring company settled with the school district for the damages to the bus and also settled with the representatives of the injured pupils is a circumstance which would justify the present claimant in concluding the company would make an effort to settle with him.

■ We will take judicial notice of the fact it was the responsibility of the insuring company to protect the interest of the estate in case of litigation. In the light of this fact the actions

and statements of the representatives of the insuring company cannot be ignored in considering whether there were peculiar circumstances which would justify the reopening of the estate and in permitting the filing of a belated claim. Smallwood v. O'Bryan, 208 Iowa 785, 225 N.W. 848. We approve the actions of the trial court in entering the orders it did. Consequently it is affirmed.—Affirmed.

All JUSTICES concur.