George M. EVJEN, Administrator of the Estate of Mark Allen Evjen, Plaintiff,

v.

Philip D. BROOKS, Administrator of the Estate of Mark J. Pauly, Appellee,

The Southland Corporation, and 7-Eleven, Mt. Vernon Road, S.E., Cedar Rapids, Iowa, Appellant.

No. 84–1055.

Supreme Court of Iowa.

July 31, 1985.

Craig A. Levien and Vicki L. Seeck, Davenport, for appellant.

Robert R. Rush and John C. Monroe of Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN, LARSON, and SCHULTZ, JJ.

LARSON, Justice.

Two defendants in a wrongful death case arising out of a car accident cross-claimed against the estate of the driver for indem-

nity or contribution. Summary judgment was entered for the estate on the ground the cross-claim was barred by the six-month limitation of Iowa Code section 633.-410 (1981). We reverse.

On March 14, 1982, Mark J. Pauly, the driver, and Mark Allen Evjen, his passenger, were both killed in a one-car accident. Estates were opened for both Pauly and Evjen. The six-month period for filing claims in the Pauly estate began to run on May 1, 1982, the date of publication of the second notice to creditors. *See* Iowa Code § 633.410 (1981). It is the application of this statute, our nonclaims statute, in the Pauly estate which is the focal point of this appeal.

In August, 1982, an attorney for the Evjen estate (hereinafter Evjen) sent a letter to the local 7-Eleven store and its owner-operator, The Southland Corporation, informing them of his intention to bring an action for damages under Iowa Code section 123.93 (actually section 123.92, the dram-shop statute). Such a notice to the liquor licensee or permittee or their insurance carrier is required to notify them of the intention to bring a dram-shop action and "indicating the time, place and circumstances causing the injury." This notice must be given in writing and within six months of the occurrence. Iowa Code § 123.93 (1981). The notice to Southland and the 7-Eleven store complied with these requirements. It notified them of the accident and the resulting deaths. It also stated that

at the time and place of said fatal accident the automobile, operated by Mark James Pauly, was traveling at a high rate of speed and failed to negotiate a curve in the road on Indian Hill Rd. S.E. Cedar Rapids, Linn County, Iowa and did strike a tree killing both Mark Allen Evgen [sic] and Mark James Pauly. That at the time and place of said fatal accident the operator of the automobile, Mark James Pauly, was in an intoxicated condition as a result of the consumption of alcoholic beverages obtained on or about the 14th day of March, 1982 from the 7-Eleven Store located at 3342 Mt. Vernon Rd. S.E. Cedar Rapids, Linn County, State of Iowa.

This notice was dated August 11, 1982, and receipt of it was acknowledged by Southland's legal department on August 30, 1982.

On receipt of this notice, an adjuster for Southland's insurance company telephoned Evjen's attorney and requested information that would connect Southland with the fatal accident. The attorney for the estate indicated at that time that he had no such information to forward. He simply wanted to put Southland on notice of his intention to bring the action and, presumably, to keep the dram-shop action alive by complying with the notice provisions of section 123.93. Southland's insurer followed up the phone call with a letter requesting the same information. No such information was forthcoming.

The claims period in the Pauly estate expired on November 1, 1982. On May 10, 1983, Evjen sued the Pauly estate, Southland, and the local 7-Eleven store. The petition alleged negligence and intoxication of Pauly and the illegal sale of liquor by the defendants Southland and the local 7-Eleven.

The Pauly estate moved for summary judgment on Evjen's suit on the ground it had failed to file a timely probate claim under section 633.410. Evjen resisted, urging that "peculiar circumstances" existed so as to provide an exception under section 633.410. The court ruled that the claim was covered by section 633.410 and that no peculiar circumstances existed. Summary judgment for the Pauly estate was entered, and Evjen's claim against it was dismissed. That ruling was affirmed by the court of appeals in an opinion reported at 365 N.W.2d 52 (Iowa Ct.App.1985).

On August 1, 1983, Southland filed a cross-claim against the Pauly estate for indemnity or contribution asserting that Pauly had been guilty of "active and primary" negligence in causing the fatal accident. Southland also filed a probate claim in the estate, on August 17, 1983, and

attached a copy of its cross-claim as an exhibit.

By the time the cross-claim and the probate claim were filed, approximately nine months had passed since the expiration of the six-month claims period. The Pauly estate moved for summary judgment on the ground the cross-claim was barred by section 633.410. Southland resisted, claiming that a demand for indemnity or contribution was not a "claim" covered by section 633.410 until a judgment or settlement fixed the extent of liability, if any, of the indemnitee. It also claimed peculiar circumstances excused its late filing of the claim.

The district court, apparently assuming a claim for indemnity or contribution was covered by section 633.410, granted summary judgment for the estate on the ground that peculiar circumstances had not been established.

Section 633.410 provides:

*All* claims against a decedent's estate, other than charges, *whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise,* shall be forever barred against the estate, the personal representative, and the distributees of the estate, unless filed with the clerk within six months after the date of the second publication of the notice to creditors; provided, however, that the personal representative may waive such limitation on filing; and this provision shall not bar claimants entitled to equitable relief due to peculiar circumstances.

(Emphasis added.) The claims period has now been reduced from six months to four, 1984 Iowa Acts ch. 1080, § 9, but this amendment does not affect this case.

Nowhere in chapter 633 is "claim" defined. The language of section 633.410, however, suggests a broad interpretation of that term, applying to "[a]ll claims ... whether due or to become due, absolute or contingent, liquidated or unliquidated...." Iowa Code section 633.424 requires that "[c]ontingent claims which cannot be allowed as absolute debts shall, nevertheless,

be filed in the court and proved." Section 633.424 also provides the procedure for processing a contingent claim.

In *Baldwin v. City of Waterloo,* 372 N.W.2d 486 (Iowa 1985), filed today, we considered an analogous question, whether a cross-petition to bring in an additional defendant was a "claim" under section 633.410. We concluded that it was. In *Baldwin,* we adopted a test suggested by an earlier Iowa case for determining whether the contingent claim in question would be barred if not filed within the time provided by the nonclaim statute. Under that test, the question is not whether the claim has in fact "accrued," or the degree of certainty in the claim; rather the test is whether the basis for such a claim against the decedent was "reasonably foreseeable" during the time the claims period remained open. *See Nichols v. Harsh,* 202 Iowa 117, 209 N.W. 297 (1926). *See generally* S. Kurtz & R. Reimer, *Iowa Estates: Taxation and Administration* § 13.13, at 441 (1975).

It must be kept in mind that whether a particular claim is of such a nature that it *can* be barred by section 633.410 is a separate issue from the question of whether in fact it *will* be barred. The latter question turns on whether "peculiar circumstances" exist, an area of inquiry which allows broad consideration of the circumstances surrounding the claim. At this point, we consider only the question whether the claim for indemnity or contribution *can* be barred by section 633.410.

I. *Is This a "Claim" Under Section 633.410?*

It is true, as Southland points out, an action for indemnity or contribution accrues or becomes enforceable only when the indemnitee's legal liability becomes fixed or certain as in the entry of judgment or a settlement. *See Vermeer v. Sneller,* 190 N.W.2d 389, 392 (Iowa 1971); *Archibald v. West Paper Stock Co.,* 176 N.W.2d 761, 763–64 (Iowa 1970); *Kroblin Transfer, et al. v. Birmingham Fire Insurance Co.,* 239 Iowa 15, 18, 30 N.W.2d 325, 327

(1948); *Duke v. Tyler*, 209 Iowa 1345, 1349, 230 N.W. 319, 320–21 (1930); *Samuelson v. Chicago, R.I. & Pac. R.R.*, 287 Minn. 264, 268, 178 N.W.2d 620, 624 (1970); *Furnish, Distributing Tort Liability: Contribution and Indemnity in Iowa*, 52 Iowa L.Rev. 31, 53 (1966); 42 C.J.S. *Indemnity* § 21, at 596 (1944) ("an implied contract of indemnity arises in favor of a person who without fault on his part is exposed to liability and compelled to pay damages on account of the negligence or tortious act of another....").

Under these principles, Southland could not have enforced an indemnity or contribution claim during the six-month claims period, because it had not yet been subjected to liability. There is a difference, however, between the accrual of the cause of action sufficient to allow suit and a "contingent claim" for purposes of Iowa Code section 633.410. We have previously discussed, in another context, the distinction between a right of contribution in the inchoate stage and one which is "accrued" so as to provide a basis for a cause of action.

> It is important to note ... the distinction between the accrual of the right to *recover* contribution and the inchoate right to contribution before payment or discharge of the common liability. Even though a cause of action for contribution does not become complete until the claimant's act of payment or discharge of more than his equitable share of the common liability, generally a right to be protected against an unfair exaction—an incidental or inchoate right to compel contribution—comes into being and becomes the property right or interest of a tortfeasor the instant the joint or concurring acts of himself and other tortfeasors give to the injured person a cause of action against them—in other words, when the common liability arises. Such right is in a sense an incident which follows the principal event out of which the injured person's cause of action arises, and once in being, although contingent, subordinate, or inchoate, it is nonetheless real and subsisting, and has an existence in contemplation of law until it is no longer needed as a resource to which the joint tortfeasor may look for relief from an imposition upon him of an inequitable share of the burden on account of the joint tort, provided he does not in the meantime waive or give up such right. This inchoate right arises as soon as the acts of the joint wrongdoers raise the injured person's cause of action against them; it does not depend upon an action against them being commenced. It is held that even death of a joint tortfeasor after the negligent act has fixed the right of contribution upon the common liability does not destroy such right nor interfere with its legal growth into an accrued cause of action.

18 Am.Jur.2d *Contributions* § 46 (1965).

Because section 633.410 does not require a claim to be enforceable in order to be barred, we look to the test of reasonable foreseeability suggested by *Nichols*.

What facts was Southland aware during the claims period which would make it reasonably foreseeable that it would have a claim for indemnity or contribution? The letter to Southland from Evjen's attorney said Pauly had died. It did not mention that an estate had been opened for him, but there is no dispute that notice of administration was properly given, and we believe Southland is charged with that information. We will presume, therefore, that Southland was aware of the six-month claims limitation of section 633.410. *See Millwright v. Romer*, 322 N.W.2d 30, 33 (Iowa 1982). Southland was also advised by Evjen's letter that decedent Pauly was the driver of the car, that there was a claim of intoxication on the part of the driver, and that Southland, or its employee, had provided the liquor.

We believe these facts were sufficient to create a reasonable foreseeability that Southland would have a claim against the Pauly estate for indemnity or contribution. This is sufficient, under the test previously discussed, to bring the claim within the coverage of section 633.410.

Analogous Iowa cases support this view. *See, e.g., St. Paul Mercury Indemnity Co. v. Nyce,* 241 Iowa 550, 41 N.W.2d 682 (1950) (surety company required to file a claim, as bank's subrogee, in estate of absconding bank employee, even though surety had not yet been required to reimburse bank); *Nichols v. Harsh,* 202 Iowa 117, 209 N.W. 297 (1926) (guaranty on note is "contingent claim" required to be filed, even though no default yet by primary debtor).

■ In view of the broad scope of our nonclaims statute and the undisputed facts in this case evidencing reasonable foreseeability, we believe the cross-claim for indemnity or contribution was a "claim" within the meaning of section 633.410. The question remains, however, whether "peculiar circumstances" existed.

II. *The Claim of "Peculiar Circumstances."*

In assessing Southland's claim of peculiar circumstances, we note the general legal principles involved. While section 633.-410 talks of "equitable relief," the case is not heard in equity, but at law. Our review, therefore, is not de novo as Southland argues. *See Baldwin v. City of Waterloo,* 372 N.W.2d 486, 489 (Iowa 1985); *In re Estate of Northrup,* 230 N.W.2d 918, 921 (Iowa 1975); Iowa Code § 633.33.

The purpose of our nonclaim statute is to provide a speedy settlement of estates. *Northrup,* 230 N.W.2d at 921. The nonclaim statute accomplishes this by requiring the filing of claims within a relatively short period of time and covering a broad field of claims and potential claims. But the breadth of claims covered and the abbreviated time for filing can, in some situations, work a hardship on a claimant—or give a windfall to others. Recognizing this, section 633.410 allows late filings in certain circumstances. It provides simply that "[t]his section does not bar claimants entitled to equitable relief due to peculiar circumstances."

The general rule is that a strong showing of peculiar circumstances is not required, especially when the estate is still open and unsettled, and the peculiar-circumstances exception should be liberally construed to effectuate justice. *Northrup,* 230 N.W.2d at 921.

Our older cases demonstrate a narrow view of the peculiar-circumstances exception, even when the estate remained open and solvent at the time of the late filing. *See, e.g., In re McPheeters' Will,* 233 Iowa 199, 8 N.W.2d 588 (1943); *In re Wagner's Estate,* 226 Iowa 667, 284 N.W. 485 (1939); *Lucas v. Ruden,* 220 Iowa 494, 260 N.W. 60 (1935). In these cases, little attention was given to the effect on the parties of the granting or denial of leave to file a late claim. If notice to creditors had been given, peculiar circumstances were rarely established.

The "justice" of the claim, moreover, was not considered a peculiar circumstance. *See, e.g., Federal Land Bank v. Bonnett,* 226 Iowa 112, 284 N.W. 97 (1939); *Bates v. Remley,* 223 Iowa 654, 273 N.W. 180 (1937).

At the same time, however, there was a parallel line of cases which gave weight to "good conscience and fair dealing" in assessing a claim of peculiar circumstances. *See, e.g., Ball v. James,* 176 Iowa 647, 659, 158 N.W. 684, 688 (1916). We discussed these contrasting views in *Northrup,* 230 N.W.2d at 922–23, where we applied the more liberal test as enunciated in *Ball.* We noted, then applied, the test as follows:

Peculiar circumstances entitling a claimant to equitable relief exist when "the delay beyond the period fixed by statute for filing claims be so excused and explained as that, when considered in connection with the claim asserted and the condition of the estate, good conscience and fair dealing demand that a hearing on the merits be accorded the claimant."

*Id.* at 922, quoting *Ball v. James,* 176 Iowa 647, 659, 158 N.W. 684, 688 (1916).

The fairness test enunciated in the *Ball* line of cases recognizes that, where the estate proceedings remain unsettled, there is little, if any, delay by allowing a late filed claim. Moreover, there are cases where allowance of such a claim will not prejudice the rights of any of the parties in the estate. One such situation has now

been recognized by the legislature, which has further ameliorated the effect of the nonclaim statute by excepting those cases where there is liability insurance. *See* 1985 Iowa Legis.Serv. 4, at 71 (West) (This amendment does not apply to this case, however, because the case arose prior to its effective date.).

In its ruling on the motion for summary judgment, the district court traced the history of Southland's involvement, much as we did under Division I. It concluded that, despite its awareness of the possible need for filing the claim, Southland "failed to do anything to protect [itself] as far as filing a claim in the Estate of Mark J. Pauly is concerned." The test it applied was based on diligence, or lack of it, on the part of Southland. It does not mention the "good conscience and fair dealing" which we opted for in *Northrup* in preference to the more rigid test of diligence under our older cases.

We conclude, therefore, that an erroneous standard of law was applied, and we are not bound by the district court's ruling based on it. *See Northrup,* 230 N.W.2d at 921.

We reverse and remand for a new hearing and the application of the standard enunciated in *Northrup.*

REVERSED AND REMANDED.