**IN THE COURT OF APPEALS OF IOWA**

No. 24-0616
Filed July 23, 2025

**IN THE MATTER OF THE ESTATE OF ERIC VON STARK, Deceased.**

**APPLEWOOD MANOR NUMBER TWO HOMEOWNERS ASSOCIATION,**
        Appellant.
_____

        Appeal from the Iowa District Court for Benton County, Valerie L. Clay,
Judge.


        A homeowners association, as intervenor, appeals a district court order
dismissing its claim against the estate as untimely.   **REVERSED AND
REMANDED.**


        Siobhan Briley of Pugh Hagan Prahm PLC, Coralville, for appellant.

        Samuel E. Jones and Jackson C. Blais of Shuttleworth & Ingersoll, Cedar
Rapids, for appellees.


        Considered without oral argument by Tabor, C.J., and Schumacher and
Badding, JJ.  Chicchelly, J. takes no part.

**TABOR, Chief Judge.**

A homeowners association—realizing it was short on insurance payments to cover storm damage—filed a claim against the estate of Eric Stark to recoup $191,912 in repair costs. But the claim was four months late. The association, Applewood Manor Number Two, sought equitable relief from that deadline based on "peculiar circumstances" under Iowa Code section 633.410(3) (2023). The probate court denied relief, faulting Applewood for its lack of diligence. Because we find that "good conscience and fair dealing" require that Applewood have a hearing on the merits, we reverse and remand to the probate court.

## I. Facts and Prior Proceedings

This appeal arose from the 2020 derecho that ravaged Cedar Rapids. That August, six condominium buildings owned by Applewood sustained major damage. Eric Stark was a homeowner and member, and Applewood tapped him to negotiate payments from State Farm, its insurance carrier.[1] In late September 2020, State Farm made an initial payment of $194,128 to settle Applewood's damage claims.

Two months later, the Applewood board of directors authorized Stark to act as the general contractor to oversee the building repairs. Board president Jenifer Phelan recalled making it clear to Stark that he should not commit Applewood to construction contracts that exceeded the amount paid by State Farm for the repairs. She also remembered Stark explaining that under Iowa's "line of sight" law, the insurer was required to replace all the siding because otherwise the

---

[1] Applewood switched from its previous carrier to State Farm three or four years before the storm because Stark managed to secure a better insurance rate.

replacement materials would not match the "aged and oxidized" siding on the condominium buildings.[2]

In May 2021, State Farm made a second payment—this time for $285,544, designated for roof replacement. That same month, Stark entered a contract on Applewood's behalf with his repair company, Home Town Restyling, for $686,311. That amount covered repair or replacement of windows, doors, decks, siding, soffits, fascia, and gutters.[3] Stark informed Applewood that he had signed a contract with Home Town but did not share a copy with the board when asked several times. Phelan said that the board believed that Stark was acting in its best interests, yet it was "sometimes a challenge" to get information from him. Board secretary Tom Chadderdon recalled Stark's acknowledgment that, all told, the repairs would likely cost a million dollars or more. In the same conversation, Stark expressed confidence that State Farm would cover that amount.

But Stark died in September 2021, before the insurance claim was settled and before the repairs were complete. Chadderdon took over as Applewood's point of contact for State Farm. In the November 2021 board minutes, Chadderdon reported that State Farm "made the final payment to the Association under the terms of claim settlement." The total paid to Applewood was approximately

---

[2] Iowa Administrative Code rule 191–15.44(1)(b) provides: "When a loss requires replacement of items and the replaced items do not match in quality, color or size, the insurer shall replace as much of the item as is necessary to result in a reasonably uniform appearance within the same line of sight."

[3] Roofing repairs were separate. Stark contracted with Haage Construction to replace the damaged shingles at a cost of about $300,000—which was paid in full.

$598,000.[4]  The minutes also reflected: "The current balance in the derecho recovery budget is $56,697.55.  If/when repair costs exceed that amount, we will have to go to State Farm for supplemental payments."  In his new role, Chadderdon also contacted State Farm agent John Leonard in the fall of 2021 and again in January 2022 to express concern about Applewood's settlement agreement with the insurer.  From his discussions with Leonard, Chadderdon understood that State Farm "would ultimately . . . cover over and above" what they had already paid because of the "line of sight" rule.

Meanwhile, Stark's estate opened on October 11, 2021.  The estate published the requisite probate notices on October 29 and November 5.  Thus, the statutory claims period expired on March 5, 2022.

Back at Applewood, Chadderdon "start[ed] to panic" as construction was happening that spring but no more insurance payments were forthcoming.  Then, in April 2022, Chadderdon learned from claims adjustor Mike Dry that State Farm declined to pay the additional amounts forecast by Stark.  After that, the board sought legal counsel; Phelan recalled that board members thought "we had a complaint against State Farm because of the Iowa line of sight law."[5]  But their

---

[4] That amount included payments of $194,128 in September 2020; $285,544 in May 2021; and $118,720 for depreciation in October 2021.  State Farm later made one additional payment of about $59,000.

[5] Also that spring, Home Town sued Applewood for the unpaid balance from the contract signed by Stark.  Home Town had also filed a claim in probate seeking $300,000 from Stark's estate.

attorney advised that "there was no case for State Farm," so Applewood filed a claim for $191,912 with Stark's estate.[6]

At the time of the claim, the estate was still open and solvent.[7] But the estate disallowed the claim as untimely. In response, Applewood moved to intervene. The court granted that motion and held a hearing on Applewood's claim in January 2024. Applewood did not dispute that its claim was filed after the statutory claims period had closed. But it alleged "peculiar circumstances" under Iowa Code section 633.410(3). What were those circumstances? Applewood asserted that its delay in filing the claim did not result from mistake or negligence— "Rather, it was due to Stark's concealment of the truth from Applewood: that he had been told by State Farm that it would not pay 100% of the amount necessary to fully repair all association buildings." To support its claim, Applewood offered testimony from Phelan and Chadderdon.

After that hearing, the court dismissed Applewood's claim, finding that it had not shown "peculiar circumstances" to justify its belated filing. The court reasoned:

> By November 2021 at the latest, Applewood knew that the contracted amounts owed to the various contractors exceeded the settlement from State Farm and that no additional payments from State Farm were guaranteed. Yet, Applewood took no affirmative action, instead taking a "wait and see" approach. It was not until after Home Town Restyling sought payment in excess of the remaining funds in Applewood's derecho account—an event that was not unforeseen— that Chadderdon finally asked a State Farm adjuster point blank whether additional payments would be received. Even then, Applewood did not promptly take action. Applewood waited more

---

[6] The estate agreed to treat Applewood's claim as having been filed on July 14, 2022, the date when Applewood filed its cross-petition in the action filed by Home Town Restyling.

[7] In fact, the inventory report reflected assets of over $1.4 million.

than three additional months before filing its claim, and then only after being sued by Home Town Restyling for breach of contract.

Applewood appeals.

## II. Scope and Standard of Review

"While section 633.410 talks of 'equitable relief,' the case is not heard in equity, but at law." *Evjen v. Brooks*, 372 N.W.2d 494, 498 (Iowa 1985). So we review for the correction of errors at law. *In re Estate of Northup*, 230 N.W.2d 918, 921 (Iowa 1975). While we are bound by the district court's findings of fact if they are supported by substantial evidence, we are not bound by that court's determinations of law. *Id*.

## III. Analysis

After Stark's estate gave statutory notice to creditors, those creditors had four months to bring claims. Iowa Code § 633.410(1). But that limitations period does not bar late claims if the creditors can show they are "entitled to equitable relief due to peculiar circumstances." *Id*. § 633.410(3); *Baldwin v. City of Waterloo*, 372 N.W.2d 486, 489–90 (Iowa 1985) ("The burden of pleading and proving the exception is on the [party] seeking equitable relief."). We don't require a strong showing, "especially when the estate is open and unsettled," because "the peculiar-circumstances exception should be liberally construed to effectuate justice." *Baldwin*, 372 N.W.2d at 489.

What circumstances are peculiar? The probate code doesn't say. So we consider the context of the statute and give the word its ordinary and common meaning. *State v. Rhodes*, 6 N.W.3d 741, 746 (Iowa 2024). The common meaning of "peculiar" in this context is "standing apart from others; distinct and

particular." *See Peculiar*, American Heritage Dictionary 915 (2d college ed. 1985). From that exercise, we find that circumstances meet the definition of peculiar if they are out-of-the-ordinary or rise above mundane reasons for missing a deadline.

Turning to case law, when deciding whether a tardy claimant has shown peculiar circumstances, our supreme court now applies a fairness test—having abandoned a more rigid "diligence" test. *See Evjen*, 372 N.W.2d at 499 (citing *Northup*, 230 N.W.2d at 922–23). Under this fairness test, peculiar circumstances exist when the claimant gives such an explanation for the delay—considered alongside the claim asserted and the condition of the estate—that "good conscience and fair dealing demand" a hearing on the merits. *See Ball v. James*, 158 N.W. 684, 688 (Iowa 1916). We do not consider the validity or "justice" of the claim as a peculiar circumstance. *Evjen*, 372 N.W.2d at 498 (citing *Fed. Land Bank of Omaha, Neb. v. Bonnett*, 284 N.W. 97, 104 (1939)).

Applewood made the requisite showing. As peculiar circumstances, it points to Stark's representations that State Farm would pay for all required derecho repairs. After Stark died, State Farm agent Leonard affirmed that notion when communicating with Chadderdon. Not until April 2022 (one month after the probate deadline) did Chadderdon receive the definitive word from claims adjuster Dry that State Farm would not be making supplemental payments. At that point, Applewood investigated its legal options. Counsel advised Applewood that its claim was not against State Farm. Rather, Applewood's recourse, if any, was against Stark, who it alleges "legally obligated the association to pay over $300,000 more than the final insurance settlement, then repeatedly misled the association to believe that State Farm was required to pay the additional amount

that Stark had bound Applewood to pay." When we consider this explanation for the delay in conjunction with the solvent condition of Stark's estate, we believe that fairness and good conscience dictate a merits hearing.

In rejecting Applewood's peculiar-circumstance argument, the probate court applied the wrong standard. It reverted to the abandoned diligence test, quoting *In re Wagner's Estate,* for the proposition that a claimant seeking exemption under this statute "must show the exercise of proper diligence," or "at least some excuse for failure to exercise diligence." 284 N.W. 485, 489−90 (Iowa 1939). *Wagner* was one of the older cases that "demonstrate[d] a narrow view of the peculiar-circumstances exception, even when the estate remained open and solvent at the time of the late filing." *Evjen*, 372 N.W.2d at 498. What's more, the probate court ruling "does not mention the 'good conscience and fair dealing'" standard. *See id*. at 499.

Applying the more liberal fairness standard adopted in *Northup*, we find Applewood's failure to file its claim until July 2022 was not disqualifying. Contrary to the estate's contention, *Northup* did not set a benchmark for the length of the delay. Instead, *Northup* emphasized that the statutory exception was designed to avoid "rigidity and hardship." 230 N.W.2d at 924. The delay here cannot be "attributed to a mistake of law or lack of knowledge of the applicable law." *See Baldwin*, 372 N.W.2d at 490. Because the probate court was too rigid in resolving the claim of peculiar circumstances, we reverse the dismissal and remand for hearing on the merits of Applewood's claim against the estate.

**REVERSED AND REMANDED.**